## SUPREME COURT—IN BANCO.

---

### SPECIAL TERM—MARCH 11, 1869.

*Allen, Ch. J., Hartwell and Austin, J. J.*

---

### REX *vs.* TIN AH CHIN, CHEONG KAM FORD, LAUON, AND AGNEE.

IN AN INDICTMENT for MURDER, a count is good charging death by act of the defendants "by means, acts, and agencies unknown."

Persons jointly indicted are not entitled to SEPARATE TRIAL.

Only the Court can POSTPONE TRIAL on an indictment for good reasons.

Rex *v.* Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee.

The denial of a MOTION to CHANGE VENUE is not matter of exception.

If death result by the act of one of several who went with COMMON purpose to commit robbery or burglary, the others are jointly liable at least of manslaughter.

A juror's remark just before the court charged the jury, "the prisoners' counsel might make their wills now," is not cause for setting ASIDE VERDICT.

There must be EVIDENCE tending to connect the prisoners with the commission of the offence or the VERDICT will be set aside.

The bill of exceptions sets forth that at the June Term, 1868, of the Circuit Court for the Second Judicial Circuit, held at Lahaina, Island of Maui, and one of the Hawaiian Islands, an indictment, wherein the defendants were jointly charged with the murder of one Kaaueaina, at Hamakuapoko, on said Island of Maui, on the 13th day of January, 1868, consisting of three counts, respectively describing the offense as committed with an iron bar, by burning and suffocation, and by acts, means and agencies to the Attorney General not known, was duly presented and found. At the December Term, 1868, of said Circuit Court at Lahaina, the defendants, at their arraignment, pleaded a special plea in bar, to the effect that the failure to prosecute upon said indictment at the term next ensuing after the commitment of the defendants for trial, and the failure to proceed with the trial at the term at which said indictment had been presented, operated as an acquittal of the defendants under the statutes. The Court overruled this plea.

Defendants' counsel thereupon moved for adjournment until the next day, to prepare affidavits to sustain a motion for change of venue, alleging that they could present affidavits that nearly all of those persons competent to serve as jurors on said Island of Maui were interested in plantations upon which persons of the race to which defendants belonged, served as laborers, and that, in their opinion, those who belonged to said race merited severe treatment and discipline, and were unworthy of the same legal protection

Rex *v.* Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee.

with others; that the said murder had greatly excited the public mind on said Island, and that Oahu, to which it was proposed to change the venue, was free from all these objections. The Court denied this motion. The defendants' counsel then moved for a separate trial for each defendant, which motion was denied.

A plea of not guilty was then entered. Thereupon the Court proceeded to impanel a jury, compelling the defendants to challenge each juror as he appeared, the government having first exercised its right of challenge, to which course the defendants' counsel took exception. The Court overruled the challenge for cause of S. E. Bishop and Raymond, after they had admitted on the voir dire that they had formed and expressed opinions regarding the guilt or innocence of the defendants, which it would require evidence to remove; the said jurors, however, stated that they were not conscious of any bias from such opinion which would operate against an impartial verdict on the evidence.

When the panel wanted one of being full, and ten peremptory challenges had been made in the defendants' behalf, without any express statement whether the same were made for them jointly or for either of them severally, their counsel sought to make a peremptory challenge in behalf of Ah Chin, and claimed that the defendants were entitled each to ten peremptory challenges; but the Court ruled that all the prisoners had exercised their full right of challenge.

Dr. Kittredge, the medical expert, testified as to the cause of the death as follows: "I think it certain that the fire would have caused his death. The injuries from the fire were sufficient to cause his death, sooner or later. The injuries from the blows may have been the chief cause of his death. The influence of the two combined was undoubtedly the cause. It was my impression that the action of fire was the cause. I could not tell whether he died of blows or contused wounds. I should say he died of a combination

of both.   The blows may have caused the death.   I don't know if the burns caused the death.''   The declarations of the deceased only mentioned the defendant Agnee and three other Chinamen (as concerned in the assault on him,) which three he could not name, or in any way describe.

Only the defendants Agnee and Ah Chin made confessions, and the defendants Kam Ford and Lauon were not present when the confessions were made.

The only evidence against Cheong Kam Ford and Lauon is that of the witness Gandell, who testified that on Monday morning he "went to the Chinese house to order the Chinamen to go to work; saw Lauon there eating his breakfast; going to the cook-house he saw me, and I saw defendant Lauon had a mark on his face, and that he pulled his hat over his face to hide it.   I went along by him to the Chinese house, and there saw Kam Ford standing at the door with a cup of rice in his hand.   Cheong Kam Ford looked pale, and his trowsers were wet from above his knees down.   I asked him why he did not get his breakfast when the rest did, and he replied that he had just got in.   They worked along slowly in the field, and kept behind the rest of the gang.   It is wet between the two estates—there was a vegetable garden near the house;" and that of witnesses Goodale and Kapihe, the former manager of the plantation to which the defendants were attached as laborers, and the latter not shown to have been well acquainted with the plantation or familiar with the quarters of the Chinese there; that a silk kihei was found in Cheong Kam Ford's bunk, rolled up in a shirt, and a Chinese frock in Lauon's bunk, with two or three stains upon it on the upper part, and a pair of trousers which had been washed, and were about as wet as well-wrung clothes.

After a verdict of guilty against all the defendants, a motion for a new trial was filed on the grounds alleged in the bill, and on the additional grounds that the verdict was con-

trary to the law and evidence, and the weight of evidence, against the instructions of the Court, and for alleged misconduct of D. G. Lee, one of the jurors, who was overheard to say, before the Court charged the jury, that "Stanley, (one of the counsel for defense), might make those men's wills now."

The instructions prayed for and given, upon the subjects of dying declarations and confessions, upon the necessity of proving the *corpus delicti* by other evidence than the defendant's confessions, and of affirmative proof to warrant a verdict of guilty on either count in the indictment, also that the jury must find that the Attorney General had no knowledge of the "acts, means and agencies" which caused the death, or must acquit in the third count of the indictment, are set out; also the further instruction, that the jury "must find that Kaaueaina came to his death either by a blow from a bar of iron, or some similar weapon, or by burning and suffocation, or by some mysterious acts, means and agencies not to the Attorney General known, and they can find that he came to his death by the joint effects of a blow from a bar of iron or a similar instrument, and burning and suffocation, under the last count of the indictment," to which the defendants' counsel excepted. The Court also charged the jury, "that if any of the defendants were found to have been present, neither trying to prevent, nor afterwards giving prompt information of the crimes, they would decide from all the evidence whether they were present "aiding and abetting, inciting or instigating," or innocently; that if all went to the house of the deceased with a common intent to commit a robbery or burglary, and death resulted from the act of one, unauthorized by the others, the law makes all equally guilty; if they went intending to do any unlawful act, and to overcome all opposition, and death resulted without any previous intention, they must be considered guilty, at least, of manslaughter. But if the jury believed that any of the de-

Rex *v*. Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee.

fendants went without knowledge of or assent to any unlawful act to be done, but for other purposes, and did not participate in such act, then in so doing they were not guilty."

Attorney General for the Crown.

Henry Thompson, (Leo Wolf and R. H. Stanley with him,) for defendants.

The opinion of the Court was delivered by Mr. Justice HARTWELL.

The first point is whether the indictment is good in its third count, which avers, with customary form, that " by some acts, means, and agencies to the Attorney General not known, with force and arms the said Tin Ah Chin, Cheong Kam Ford, Lauon and Agnee, upon him the said Kaaueaina, did then and there inflict divers severe and mortal wounds, of which, etc., the said Kaaueaina, etc., did die."

The Constitution, Art. 7, provides that " no person shall be held to answer for any crime or offence unless upon indictment fully and plainly describing such crime or offence."

Our laws are silent as to the requisites of a legal indictment, except that it shall "fully and plainly describe the offence."

The Court " in all civil matters may apply necessary remedies to evils that are not specifically contemplated by law." It follows by the principle " *expressio unius ˉexclusio alterius* " that in criminal matters the Court do not have the discretion given them in civil matters, of applying *necessary remedies*, but must take the law as it is, with such light as can be gained from the common law of other countries and the civil law,—our practice has leaned in favor of the common law of England, where the same does not " conflict with the laws and customs of this Kingdom." The laws of England and the United States have furnished the basis for our own laws—the reported cases in which the English language

is not used are not brought to our notice, and the genius and spirit of the English common law conform more easily to our customs than the more artificial code of the civilians.

By the authorities this count is good. In Commonwealth *vs.* Webster, 5 Cush., 321, Shaw, C. J., held that this kind of a count is good whenever the evidence is satisfactory that the homicide was committed, but leaves the mode of death somewhat doubtful. That case attracted general attention, and has never been doubted, but has been affirmed repeatedly in other courts of eminent authority. People *vs.* Cronin, 35, Cal., 210. In reason and justice, also, this count is undoubtedly good, especially as the jury were charged that before finding a verdict of guilty upon it, they must find that such uncertainty as to the mode did exist.

The next inquiry is upon the sufficiency of the plea in bar. The statutes relied upon in its support are Section 1168, Civil Code, amended by Act, 1866, and Section 1178, which read as follows:

Section 1168. In all cases or offences against the laws of this Kingdom, triable only by a court of record, the accused shall be arraigned and prosecuted by an indictment by a legal prosecutor of the Crown, as soon after the commitment of the offence of which he is accused as may be expedient; it being, however, expressly enacted, that the presentation of an indictment against an accused, shall not be deferred beyond the term of the court having jurisdiction over the alleged offence, next succeeding the commitment of the accused for trial, by a magistrate having jurisdiction therefor. And the trial shall then and there be proceeded with, unless the same shall be postponed by the court to procure evidence on behalf of the prosecution or defence.

Section 1178. The failure to prosecute upon the indictment, if found, at the ensuing term of the court, unless the venue be changed, or unless the cause be postponed by the court, or a failure to sustain the indictment upon the law in-

Rex *v.* Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee.

volved, or a verdict of not guilty by the jury, or the successive disagreement of two juries impanelled to try the cause, shall operate as an acquittal of the accused, and the court shall order his discharge from custody, subject, however, to the provisions of the next succeeding section, (in cases of insanity).

It is claimed that there was no postponement by the Court to procure evidence, and that acquittal must therefore result.

It was strongly urged by the Attorney General that the statutes cited are merely directory and not imperative. But cases cited to sustain this view, which relate to civil matters, to irregularities due to *vis major*, or the act of God, or coming under statutes which do not prescribe the result of noncompliance, are not in point. The decisions that new trials are not opposed to constitutional or legal provisions that no person shall twice be put in jeopardy for the same offence, proceed substantially on the ground that only a *legal* putting in jeopardy is intended. 3 Gr. Ev., §37, and cases there cited. The rule in Section 13, Civil Code, that every construction which leads to an absurdity is to be rejected, can only apply in doubtful expressions, and besides, what absurdity in going to trial at the same term more than at the subsequent term ?

It was further argued that before the Act of 1866, the law limited the circuit terms to two weeks, in which time, unless causes could go over, the criminal docket might not be closed, and a failure of justice result. The reply to this is, that when the law is clear and explicit, the courts must leave the Legislature to "apply the necessary remedies" if the law is defective, that the Legislature of 1868 took off this limit of the length of the terms, and, finally, that this case did not require postponement to prevent failure of justice.

Taking these sections together, we cannot avoid the conclusion that they are imperative, so far to require the cause to be postponed by the court. They give a *personal right*,

under the constitutional principle, that speedy trials shall be had.

The position that "acquittal" here means merely discharge from custody, not preventing another trial for the same offence, is not tenable. It only remains to inquire whether the law has been duly complied with.

The answer to the plea avers that after trial, conviction and sentence of defendants upon an indictment for another murder, supported by the same evidence, and alleged to have been committed at the same time and place, and to be a part of the same transaction alleged in this indictment, the Attorney General stated that it was not expedient to proceed to trial on the present case, but that the same was not abandoned, and that this suggestion received the open approval of the Court.

This answer is so far traversed as to deny the averment of not abandoning the case, and of open approval by the Court of the suggestion made. But even admitting this, although the course adopted is very objectionable, on the score of informality, and although we cannot admit that a waiver of legal rights affects this case, we are convinced that virtually and substantially there was a postponement of the cause by the Court. As there is no pretence of time being asked to procure evidence, we must consider whether other grounds suffice.

The rule that legal grounds must be presumed, unless the contrary appears, does not apply here, since the actual grounds are set out in the pleadings.

By the rule of law, enacted in Section 12, Civil Code, laws "*in pari materia*" are to be construed together. Applying this rule with the statute upon implied repeals, Section 21, Civil Code, we observe that Section 1168 excepts only the case of postponement by the Court for evidence, and Section 1178 excepts the cases of postponement by the Court, generally, change of venue, quashing indictments, verdict of not

guilty, and successive disagreement of juries. We can not for a moment admit that Section 1168 repeals the power of the Court to postpone for change of venue, or in case of the overruling of an appeal from a refusal of the Circuit Court to quash an indictment. That is, the general statute power of the Court to postpone causes is not affected by Section 1168, which does not attempt to enumerate them all, nor to exclude any. Both sections may read as follows; "The trial shall then and there be proceeded with, unless the Court postpone the cause to procure evidence, or for other reasons." So strong, however, are the statutes in favor of a prompt trial, that even the Court should exercise this power only "*ex necessitate rei,*" and where the accused suffer no injury thereby. The case of necessity did not exist here, but the postponement worked only in favor of the accused. They were in jail, not awaiting trial, but execution. Their subsequent trial was at a time when public excitement had cooled, and the chances in their favor were better.

We decide, then, (1) that the statute gives the Court a general power of postponement; (2) that this power was exercised in this case, and (3) that the case warranted its exercise.

We see no objection to the refusal to grant time to prepare affidavits for a motion to change the venue. By Section 857, Civil Code, it is discretionary with the Court to change the venue on satisfactory proof that a fair and impartial trial can not otherwise be had.

The denial of the motion for separate trials was also at the discretion of the Court. No statute gives the right of separate trial, and no grounds for the motion were offered to be shown.

The statute, as well as the rules of Court, prescribe no mode of impaneling the jury. Although the mode adopted did not conform to our practice, we see no valid objection to it, and it seems to have been according to the course of the

Rex *v.* Tin Ah Chin, Cheong Kam Ford, Lauon, and Agnee.

English common law.—Roscoe's Cr. Ev., p. 195, and cases there cited.

It was not denied that each defendant had by statute a right to ten peremptory challenges, and the only question is whether all had joined in each challenge. The defendants' counsel might easily have secured forty peremptory challenges by stating, *when they challenged*, for which of the four defendants they spoke. As they did not, we must assume that they spoke for all, otherwise the challenges were of no effect.

The instructions upon confessions, admissions, and dying declarations, seem correct enough, and so far as appears, the verdict was not contrary thereto.

As to the certainly very improper language of the juror, we do not consider it sufficient cause for setting aside the verdict. The irregularity in a juror's conduct to warrant this, "should be of such a nature as to affect the impartiality, purity and regularity of the verdict itself."—Bennett & Heard's Lead. Cr. Cases, Vol. 2, 388.

The final consideration is upon the sufficiency of evidence to sustain the verdict against the prisoners Kam Ford and Lauon. In civil as well as criminal cases, the Court will disturb a verdict for insufficiency of evidence only in very clear and strong cases. Where, however, there is wanting any essential link in the chain of evidence, or where there is utter want of evidence to establish the *corpus delicti*, or to lay any foundation on which to build up a legal proof, it is no usurpation of the province of the jury, but it is a duty binding upon the Court to set aside the verdict.

"It is undoubtedly by the theory of our forms of trial, the province of the jury to decide ultimately upon questions of fact; but it is equally true, that it is within the province, and often the duty of the Court, to set aside a verdict, where it appears to them to be contrary to the weight of evidence. On a first trial, there may be room to believe that the jury

have fallen into some error in regard to the law, or in regard to the value and force of the evidence, which they themselves would correct upon a careful revision."—*Per Cur.* Coffin vs. Phoenix Ins. C., 15 Pick., 294.

Here we have, in the prisoner Lauon's case, evidence that the morning after the murder, he had "a mark on his face;" that he "worked slowly behind the others;" that a Chinese frock, with stains upon its upper part, of what nature does not appear, was found in his bunk, together with a pair of trowsers, "almost as wet as well-wrung clothes." The evidence that he "pulled his hat over his face to hide" the mark from the overseer, was an inference only of the witness, to be rejected as utterly incompetent.

In the prisoner Kam Ford's case, the evidence is that he "looked pale" on the morning in question; that "his trowsers were wet from his knees down;" that he was late at breakfast, and accounted for this by saying that he had "just come in;" that he "worked slowly behind the others;" that a silk kihei, the property of Napua, (one of the murdered men), was found in his bunk, rolled up in a shirt.

There is nothing to connect these circumstances with any participation in the murder, or with any presence at or knowledge of the crime. However significant they may seem, and however natural it might be that they should follow guilt, they in no manner or degree prove that guilt. It is impossible to say whether the jury connected these facts with the confession of the other two prisoners, made in the absence of these men, and therefore having no legal effect against them, or whether they assumed or inferred guilt. In either case, the verdict against Kam Ford and Lauon is contrary to law, as not sustained by the evidence, which was of an entirely unsatisfactory character to convict them of the charges alleged.

The judgment of the Court, therefore, is, exceptions over-

ruled in case of Ah Chin and Agnee; verdict set aside, sentence vacated, and new trial ordered, in case of Kam Ford and Lauon.