[Crim. No. 1859.   Second Appellate District, Division Two.—January 7, 1930.]

THE PEOPLE, Respondent, v. WILLIAM J. STEVEN-SON, Appellant.

John F. Murphy, Anderson & Anderson & Sheehan and W. H. Anderson for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

BURNELL, J., *pro tem.*—Appellant was charged by information filed April 24, 1929, with the crime of grand theft. He was tried by the court sitting without a jury, trial by jury having been waived by appellant, his counsel and the district attorney, and was found guilty on one of the two counts of the information and not guilty on the other. A motion for new trial was made and denied.

The first count, on which appellant was convicted and sentenced, was as follows: "The said William J. Stevenson is accused by the District Attorney of and for the County of Los Angeles, State of California, by this information of the crime of Grand Theft, a felony, committed as follows: That the said William J. Stevenson, on or about the 29th

day of April, 1927, at and in the County of Los Angeles, State of California, did unlawfully take away thirty-five (35) Metropolitan Mortgage Company Collateral Trust Gold Bonds of the total value of Thirty-one Thousand, Six Hundred Sixty-six and sixty-seven hundredths ($31,666.67) Dollars, lawful money of the United States, the personal property of one E. Bailey Webb.'' ■ One of the grounds urged by appellant for a reversal of the judgment is that no crime is charged against the defendant in the count of the information on which he was found guilty, since at the time of the commission of the acts which resulted in his prosecution no such crime as ''Grand Theft'' was known to our law, the amendments to certain sections of the Penal Code which went into effect July 29, 1927, for the first time defining and, as appellant contends, creating this offense.

Prior to the code amendments of 1927, certain acts were declared unlawful which were committed with the object and purpose of wrongfully acquiring the money or other property of others. Depending on the method used in such wrongful acquisition, these acts were given certain names— as larceny, embezzlement, obtaining property by false pretenses, etc. The record in the case before us discloses that there was sufficient evidence to have supported a conviction for that method of such wrongful acquisition which was formerly denominated ''embezzlement.'' In 1927 (Stats. 1927, p. 1046) the legislature, by amending several sections of the Penal Code, abandoned these various names as applied to the different forms of wrongful acquisition of property and adopted the one named ''theft'' as the common designation of all of them. At the same session a new section (490a) was added to the code, providing that ''Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor.'' The effect of these amendments, and particularly that of section 484, which contains the definition of theft, ''is that the former crimes of larceny, embezzlement, and obtaining property by false pretenses are merged into the one crime of theft'' (*People* v. *Plum*, 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322]). ''The change of name is one of form and not of substance''

(*People* v. *Giron,* 94 Cal. App. 53 [270 Pac. 462]). "Nor can it be successfully argued that, because the offense was committed prior to the amendment of section 484 of the Penal Code that appellant could not be prosecuted for grand theft instead of embezzlement as that term was used prior to the amendment. The punishment and the offense are the same. The change is a procedural one which in no way impairs a substantial right of the defendant" (*People* v. *Dempster,* 96 Cal. App. 358 [274 Pac. 592]).

That the 1927 amendments effected merely a change in nomenclature is the basis of the decisions in *People* v. *Giron, supra,* and in *People* v. *Jordan,* 92 Cal. App. 543 [268 Pac. 373]. In the first of these cases the defendant, who was charged with burglary by entering certain premises "with the intent then and there and therein to commit the crime of larceny," contended that the information failed to state a public offense for the reason that since the amendments of 1927 there is no longer any crime known as larceny in this state, and that since the word "larceny" did not describe any known offense its presence in the information should be disregarded, which would leave merely a charge of unlawful entry upon the premises of another—"in other words, a mere trespass, but not any crime punishable under the laws of this state." This contention this court found to be without merit. In the second case the situation was analogous to that in the case before us. The information, drawn in conformity with section 952 of the Penal Code, as amended in 1927 (Stats. 1927, p. 1043), charged the defendant with grand theft in each of its five counts. Four of the counts charged the commission of the offense at a date prior to the going into effect of the 1927 amendments. Passing upon a contention similar to that urged by appellant here, the court noted that the facts proved sufficiently established the commission by the defendant of the crime formerly known as obtaining property by false pretenses and quoted the rule that "If an act is criminal and punishable when committed, and a statute is subsequently enacted also making it criminal and punishable, but giving the crime a designation not before given to it, the situation of the accused is not altered to his disadvantage, and hence it cannot be said that there has been any *ex post facto* legislation, nor does the new or

mandatory statute obliterate the preexisting law so that a conviction and punishment after its enactment and the consequent repeal of the former statute can be regarded as a conviction and punishment of an act not criminal when committed."

Appellant in the instant case takes a position almost identical to that of the appellant in *People* v. *Giron, supra,* urging that since at the time of the alleged offense there was no such crime as theft known to the law the charge of commission of grand theft must be eliminated from consideration of the information, leaving only the statement "That the said William J. Stevenson, on or about the 29th day of April, 1927, . . . did unlawfully take away" certain personal property of one Webb, and that it therefore contains "no charge of the commission of any conceivable crime." This contention is devoid of merit. As far as the use of the term "Grand Theft" is concerned, no right of the defendant was, as the authorities above referred to hold, in any way prejudiced by substituting it for the word "embezzlement" as descriptive of the acts for the commission of which the defendant was tried and of which the evidence showed him guilty; so far as the failure to employ the words "wilfully" and "feloniously," or to describe the manner in which the offense was committed is concerned, section 952 of the Penal Code as likewise amended in 1927, did away with the necessity of alleging more than "that the defendant unlawfully took the property of another." This change in the law, relating to a matter of pleading, is also "a procedural one which in no way impairs a substantial right of the defendant" (*People* v. *Dempster, supra*).

Appellant's contention really amounts to a charge that as to him the amendments of 1927, substituting the term "theft" for the words "larceny," "embezzlement" and "obtaining property by false pretenses" and providing a simplified form of pleading, are *ex post facto* laws and therefore void under state and federal constitutional provisions. But this position is entirely untenable for the reason that whether taken as a whole or singly, in so far as they affect appellant's case, these amendments do not nor does any one of them contain any of the elements the presence of which in a statute brings it within the definition of an *ex post facto* law. The law as amended does not

"make an action, done before the passing of the law and which was innocent when done, criminal." The fraudulent appropriation of property by a person to whom it has been entrusted has always been criminal in this state. It does not "aggravate the crime or make it greater than it was when committed," nor does it "change the punishment and inflict a greater punishment than was annexed to the crime when committed," for under section 489 of the Penal Code as amended in 1927 the punishment for appellant's act, now styled "Grand Theft," is identical with that annexed to the same offense when called "embezzlement" (Pen. Code, sec. 514). Neither does it "alter the legal rules of evidence and receive less or different testimony than the law required at the time of the commission of the offense to convict the offender." These are the tests of an *ex post facto* law as stated in *Calder* v. *Bull*, 3 Dall. 386, 389 [1 L. Ed. 648]; *Kring* v. *Missouri*, 107 U. S. 221 [27 L. Ed. 506, 2 Sup. Ct. Rep. 443]; *People* v. *Edenburg*, 88 Cal. App. 558 [263 Pac. 857], and many other cases. If we may substitute the word "embezzlement" for the words "obtaining property by false pretenses," this case falls squarely within the ruling in *People* v. *Jordan, supra,* from which we again quote: "If under the facts alleged the defendant could have been found guilty of a crime which would have carried a greater or different penalty there might be something in the contention of counsel for the appellant. . . . In the given case the law as amended and under which the indictments were drawn does not alter the legal rules of evidence in the case at bar. . . . There is nothing in the law as amended and objected to under which the present proceeding is had that in any way aggravates the particular crime or crimes herein charged, or in any way makes it any greater crime than it was under the law as it stood at the time when it was committed. . . . The evidence shows that the facts proved against appellant were those establishing the commission of the crime heretofore known as the crime of obtaining property by false pretenses. Furthermore, the law as amended does not change the punishment for the particular crime herein charged, and does not in any way provide for the infliction of any greater punishment than was annexed to the particular crime charged when the crime was committed. . . .

The information, although drawn in conformity with the law as amended, did not in any way hinder defendant in the preparation of his defense as long as the facts constituting the substance of the offense charged were fully given therein.''

Appellant's next point is that the court erred in refusing to order the district attorney to permit his counsel to inspect and use a transcript of testimony before the grand jury, of which the prosecution had made use during its examination of certain witnesses. The transcript in question was of evidence received by the grand jury during investigation by that body of the charge against appellant which eventually resulted in the filing of the information against him by the district attorney. No indictment was returned by the grand jury, however. While appellant now insists that this transcript was improperly used for the purpose of impeaching the testimony of the state's own witnesses, no objection was made at the trial to such or any use of it, and, of course, this objection may not for the first time be urged on appeal (*People* v. *Durrant*, 116 Cal. 179 [48 Pac. 75]).

Appellant did, however, demand that he be accorded an opportunity to examine the transcript, and when this demand was refused by the district attorney the court was requested to order the latter to permit such examination. This the court refused to do, saying: ''That is a matter that will have to be decided with them (the deputy district attorneys conducting the case for the People) ; the court has no authority to order them to give you a transcript or a copy of it.'' This ruling was clearly erroneous. The district attorney had exhibited portions of the transcript to several of the People's witnesses and also to the defendant himself during his cross-examination, and had questioned them concerning statements shown therein to have been made by them at the grand jury investigation, and had read excerpts from the testimony in the transcript into the record. Both the law and common fairness to the defendant—and the former should always include the latter —required that the defendant be accorded an opportunity to examine and, if he was so advised, to make use of the document as to which the state had examined these witnesses. The rules of evidence in criminal cases are, gen-

erally speaking, the same as those in civil cases (sec. 1102, Pen. Code), and it is provided by section 2054 of the Code of Civil Procedure that ''Whenever a writing is shown to a witness it may be inspected by the opposite party, and no question must be put to the witness concerning a writing until it has been so shown to him.'' Section 1854 of the same code is as follows: ''When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; . . . and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence.'' When portions of the transcript in the instant case were read into evidence in connection with the testimony of witnesses such portions were ''given in evidence'' and were before the court as the trier of facts. The only way in which ''the whole of the same subject'' might be ''inquired into'' by the defendant was through an examination of the writing—the transcript —from which such excerpts were read. Were the rule otherwise it might easily be possible for the party having such document in his possession to select, call the witness' attention to and read before the court or jury portions of the testimony at the former hearing which seemingly contradicted the testimony of the witness given in the pending proceeding, without the adverse party having any opportunity to discover other statements in the transcript which might explain the apparent discrepancy.

In *Hobart* v. *Tyrell*, 68 Cal. 12 [8 Pac. 525], it was held that when a witness for one party has read an extract from testimony given by him in a previous judicial proceeding it is error to refuse the adverse party the right to introduce the whole of such testimony. The precise question involved here received very thorough consideration in *Risdon* v. *Yates*, 145 Cal. 210 [78 Pac. 641]. That was an action for damages for a battery committed on the plaintiff by the defendant, and in the course of the trial the former called as a witness a justice of the peace for the purpose of identifying the record in a criminal action against the same defendant involving the same battery, and introduced the complaint and the docket of the justice showing that the defendant had entered a plea of guilty.

We quote from the opinion the following excerpts: "Defendant sought by cross-examination of the justice and by his own testimony to prove the entire statement made to the justice at the time defendant pleaded guilty concerning such plea and the reasons why defendant made it. In other words, defendant sought by several questions to prove the entire statement in connection with the oral plea, as made to the justice at the time and entered in his docket. The court sustained the objections of plaintiff to each of the questions by which it was sought to elicit the full statement. In this the court erred. . . . But where a defendant has pleaded guilty in a criminal case the plea and judgment are received in evidence as an admission, but· not as conclusive. 'It is therefore to be treated according to the principles governing admissions, to which class of evidence it properly belongs.' (1 Greenleaf on Evidence, 16th ed., sec. 527a.) If an admission is testified to by a witness against a party, such party has the right in cross-examination to bring out the whole of what was said in direct connection with and pertaining to the admission. In this case the plaintiff was in effect allowed to prove that defendant said or admitted that he was guilty of an assault and battery upon plaintiff. This admission may have turned the scale and caused the jury to disregard all the defendant's testimony. The plaintiff was allowed to put in evidence the part of the conversation or declaration to the justice which in law amounted to an admission. The defendant was not allowed to show that he stated other facts at the time which showed that it was not an unqualified admission. The statement of defendant in the form of an admission to the justice was allowed for the purpose of corroborating the evidence of plaintiff; the statement of defendant, if such statement was made, that plaintiff struck the first blow, was not allowed to go to the jury. It is certainly evident that this was receiving evidence only on one side of the controversy. The plaintiff was not bound to offer in evidence the admission made before the justice, but having done so the defendant was entitled to the whole of the declaration or admission. The fact that the justice wrote down part of it in his docket makes no difference. It was, after being written in the docket by the justice, but an oral admission of defendant. The entry by the

justice was only the conclusion or opinion of the justice as to the effect of what defendant said. The question is, did the defendant in words admit his guilt before the justice? If he did, what were the words and what did he say? When a part of a declaration or conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other. In *Freel* v. *Market Street Cable Ry. Co.*, 97 Cal. 40 [31 Pac. 730, 731], a written statement made by an employee of the defendant corporation was in the courtroom during the trial and in the possession of counsel for the defendant. The plaintiff demanded it for the purposes of cross-examination, counsel for the defendant ''denied the right of counsel to demand his private papers'' and the court ordered him to hand it over to the plaintiff's attorneys. One of the errors. assigned by the defendant on its appeal from the judgment rendered against it was this ruling. In upholding it the Supreme Court said: ''This statement was in the possession of the defendant's counsel upon the trial, and indeed was lying upon the desk before him when the demand in question was made. The plaintiff could not, in the nature of things, know the contents of this paper. It is not claimed that she had ever seen it, nor had it ever been in her possession. It was produced for the first time by defendant's counsel. To sanction the rule claimed by the defendant in this case would enable a litigant to suppress adverse evidence of the most important character.'' Among other cases which lend support to the views here expressed are: *Granite Gold Min. Co.* v. *Maginness*, 118 Cal. 131 [50 Pac. 269], *McGraw* v. *Friend & Terry Lumber Co.*, 133 Cal. 589 [65 Pac. 1051], and *Souza* v. *Joseph*, 22 Cal. App. 179 [133 Pac. 981].

As opposed to these authorities the respondent cites *People* v. *Glaze*, 139 Cal. 154 [72 Pac. 965], in which it was held that the trial court properly refused to order the district attorney to produce a statement made by a witness for the prosecution prior to the trial. This statement, made at police headquarters and taken in shorthand by a stenographer and afterward written out in longhand, was unsigned and ''there was nothing to show that the witness had ever read the statement or seen it, or that he was aware of its contents.'' While it was in the possession of the

district attorney, he had made no use of it by questioning the witness as to statements claimed to have been made by him during the examination at the police station nor had he read any of it into the record or in the presence of the jury. An entirely different case is presented here, where witnesses were questioned as to testimony given by them before the grand jury as perpetuated in the transcript in question and where such portions as the prosecutor desired to have before the court were read by him from it.

We cannot say that the error in refusing to permit defendant's counsel to inspect the transcript was of an unprejudicial character, since the transcript might have contained other statements by the witnesses a portion of whose testimony contained therein was read which would have thrown an entirely different light upon the case from that diffused by the fragmentary portions selected and read by the district attorney.

As the judgment must be reversed and the cause remanded for another trial because of the error just discussed, no useful purpose would be served by a discussion of the other rulings as to matters of evidence complained of by appellant and which, in our opinion, are not apt to arise on the retrial.

Judgment and order reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 22, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1930, and the following opinion then rendered thereon:

THE COURT.—In denying the petition in the foregoing cause we deem it proper to add:

Where a transcript is made under the circumstances here shown and used by the district attorney in the manner related by the decision, and its contents are denied inspection by the defendant, it comes in poor grace for the People to invoke the provisions of article VI, section 4½, of the Constitution, to the effect that the burden is upon the

appellant to show prejudicial error. The only way in which prejudicial error could possibly be shown is by an inspection of said transcript and this right has been denied him. It was not intended that said constitutional provisions should be applied in such a case. To so apply them it would require a showing on the part of the defendant which is rendered impossible by the act of his adversary. The constitutional provisions impose the burden of showing prejudice or injury by a ruling which is within the power of the complaining party to present. It does not contemplate a situation where such party without fault has been denied an opportunity to determine whether or not he has been prejudicially injured. We do not wish to be understood as relaxing in the slightest degree the effect of the language of the Constitution that the error complained of must affirmatively appear to have resulted in a miscarriage of justice to authorize the reversal of a judgment. We do hold, however, that a complaining party should have an opportunity to show injury.