Lamneck, J.
The first alleged error assigned is set forth in the defendant’s brief as follows:
“The Court of Common Pleas of Jackson County, Ohio erred to the prejudice of defendant, in overruling defendant’s motion for an order of said court requiring counsel for the state to turn over to the defendant or his counsel a copy of a transcript of testimony given by the defendant and by his wife on April 17, 1952, before the coroner of Jackson County, Ohio, and other *178 officials of said county, which said transcript was in the hands of counsel for the state during the trial of this cause, and parts of which said transcript were read into the record as part of the state’s rebuttal evidence.”
The defendant claims that the court in refusing to grant his motions for a copy of the transcript committed error to his prejudice on two grounds, viz.:
“1. The court erred in denying said motion for the reason that said transcript was shown by the testimony to be a part of the coroner’s inquiry into the death of Thomas Easley and was, therefore, by Section 2855-11 of the General Code of Ohio a public record.
“2. The court erred in denying said motion for the reason that said transcript was exhibited to the jury during the state’s cross-examination of defendant’s witnesses and selected portions thereof were read into the record of this cause by counsel for the state.”
Section 2855-7, General Code (Section 313.17, Revised Code), relating to the powers and duties of a coroner reads as follows:
“The coroner or his deputy may issue subpoenas for such witnesses as are deemed necessary, administer to them the usual oath, and proceed to inquire how the deceased came to his or her death, whether by violence to self or from any other person or persons, by whom, whether as principals or accessories before or after the fact, and all circumstances relating thereto. The testimony of such witnesses shall be reduced to writing, by them respectively subscribed, and with the findings and recognizances hereinafter mentioned, if any, shall be kept on file in the coroner’s office, unless the county fails to provide a coroner’s office, in which event all of said records, filings and recognizances shall be kept on file in the office of the clerk of 'courts. If the coroner *179 deems it necessary, he shall canse such witnesses to enter into recognizances, in such sum as may be proper for their appearance at the succeeding term of the Court of Common Pleas of the county to give testimony concerning the matter. He may require any and all such witnesses to give security for their attendance, and if they or any of them neglect to comply with his requirements, he shall commit such person to the prison of the county until discharged by due course of law. In case of disobedience of any person to comply with such subpoena or on refusal of a witness to testify to any matter regarding which he may lawfully be interrogated, the probate judge, or a judge of the Common Pleas Court of the county in which the subpoena is issued on application of the coroner, shall compel obedience by attachment proceedings as for contempt, as in the case of disobedience of the requirements of subpoena issued from such court or the refusal to testify therein. A report shall be made from the personal observation of the corpse, statements of relatives or other persons having any knowledge of the facts, and such other sources of information as may be available or from the autopsy.”
The record shows that many of the questions allegedly contained in the transcript and brought out in cross-examination were propounded by the coroner. The coroner questioned both the defendant and his wife, viewed the scene of death and the body of the deceased, took charge of the body, and signed a death certificate showing the cause of death and the means used to cause death. It definitely appears from the foregoing that a coroner’s inquest had been held.
Section 2855-7, General Code (Section 313.17, Revised Code), provides that witnesses may be subpoenaed by the coroner, that they shall be sworn, and that “the testimony of such witnesses shall be reduced to writing by them respectfully subscribed, and with *180 the findings * * * shall be kept on file in * * * the office of the clerk of courts,” if the coroner has no official office.
Section 2855-11, G-eneral Code (Section 313.10, Revised Code), provides that the records of the coroner are public records and when properly certified by him shall be received as evidence.
The state contends that, since the defendant and his wife were not sworn before their statements were taken and no transcript thereof was filed in the clerk’s office, those statements are not testimony of witnesses constituting a part of the coroner’s official records.
It is the uniform policy of the law to require either the administration of an oath to a witness or some affirmation or declaration as an equivalent, before testimony of a witness is competent. It has been held that, in a criminal trial, a defendant is entitled to a new trial where a witness gives material testimony without being sworn, and the defendant and his counsel have no knowledge of the fact until after judgment. See Langford v. United States, 4 Ind. Ter., 567, 76 S. W., 111, 4 Ann. Cas., 1021.
In the instant case, a transcript of the full statements of the defendant and his wife is not a part of the bill of exceptions. It would appear from the record, however, that the coroner did everything the statutes require in conducting an inquest, with the claimed possible exception of swearing the witnesses and filing a transcript of their testimony subscribed by them, together with his findings, in the office of the clerk of courts. The mere failure of a coroner to file a transcript of the testimony of witnesses in the clerk’s office will not of itself prevent such testimony from being a part of his official records. An omission to administer an oath to a witness in a coroner’s inquest does not of itself make such evidence incompetent and an improper part of the coroner’s evidence.
*181 Section 2855-7, General Code (Section 313.17, Revised Code), provides that witnesses who are subpoenaed to testify at a coroner’s inquest must be sworn and “the testimony of such witnesses shall be reduced to writing, [and] by them respectively subscribed.”
But this section also requires the coroner to prepare a report “from the personal observation of the corpse, statements of relatives or other persons having any knowledge of the facts, and such other sources of information as may be available or from the autopsy.”
The coroner is, therefore, not required to swear all persons from whom he acquires information, nor is he required to reduce to writing the testimony of a witness who has not been subpoenaed and have him sign it.
In the instant case, the coroner did not prepare an official report of any kind. However, since he officially participated in securing statements from persons having knowledge of the facts and those statements were taken in shorthand in his presence and later reduced to writing, such statements must be considered a part of his official records, in the absence of an official report made from such statements and from other sources of information.
It has been held that admissions voluntarily made by an accused at a coroner’s inquest may be used against him. See Church v. State, 179 Miss., 440, 176 So., 162; State v. Perry, 106 S. C., 289, 91 S. E., 300; and State v. McClurg, 50 Idaho, 762, 300 P., 898.
The bill of exceptions shows that the state questioned both the defendant and his wife relative to their written statements taken before the coroner and other officials and exhibited the same to the jury by reading therefrom in its presence.
The defendant contends also that, even if such transcript is not a part of the coroner’s records, defendant had a right to see and examine it after portions there *182 of had been used by the state during cross-examination of both the defendant and his wife at the time of the trial to show whether or not the contents of the transcript conflicted in part with their testimony given on direct examination.
It has been held that a transcript of interviews conducted by a prosecuting attorney with prospective witnesses is simply a memorandum in his hands and is immune from inspection by an accused.
In State v. Rhoads, 81 Ohio St., 397, 91 N. E., 186, 27 L. R. A. (N. S.), 558, this court held in the first paragraph of the syllabus:
“Where a person conducts a private interview with one who afterwards is called and examined as a witness before the grand jury, which found an indictment against the defendant concerning some matters disclosed in said interview, which interview was steno-graphically taken, written out and subsequently delivered to the prosecuting attorney for his use, and on the trial the person interviewed is called, and testified for the state in support of the indictment, it is error for the court, on request of defendant, to order the prosecuting attorney to deliver the transcript of said interview to defendant or his counsel, or to order the prosecuting attorney to allow either of them an inspection of the same.”
In that case a state witness gave evidence at the trial tending to establish the guilt of the accused. He had previously given a sworn transcribed statement to the city solicitor who delivered the same to the prosecuting attorney. At the trial the witness was cross-examined by the defense as to what he had told the city solicitor. On re-examination the prosecuting attorney, using the transcript to frame questions to be put, propounded to the witness several questions similar to those used in the transcript. It was not read *183 to the jury nor did the witness read from it to refresh his recollection. On motion the defendant was given permission to examine the transcript, and the prosecuting attorney was ordered to deliver to defense counsel a copy of that part of the transcript regarding which the witness had been re-examined. That was held by this court to be reversible error.
In that, case, the transcript of the.city solicitor was not read to lay the ground work for possible impeachment of a defense witness on cross-examination, but was referred to by the prosecuting attorney to frame questions to be propounded to a state witness on reexamination.
In the instant case, the following appears as part of the cross-examination of the defendant:
“Q. And 1 will ask if Mr. Oivens didn’t say, ‘Donovan, you have talked to the deputy sheriff and 1 as to what happened this evening at your home,’ and your answer was, ‘unh hunh’; is that right¶ A. I might have said that.
“Q. ‘And as I explained to you, we want to be sure we have this story in your words.’ Your answer was, ‘that’s right.’ Then I will ask if he didn’t make this statement, ‘We want to be sure if we are called upon later to tell what you told us, we will be able to tell what you told us, and we won’t be mixed up. We would like for you to go over it again and tell what happened, and Miss Thompson, the court reporter, will take it down, and we will know what happened.’ A. ‘Where will we start at?’ Q. ‘Just tell in your own words, as nearly as you can, what happened and how it happened, and anything you think you should tell us.’ Didn’t they make that statement? And you answered, ‘All right’?
“Mr. Reese: Objection.
“By the Court: What ground?
“Mr. Reese: That isn’t impeachment.
*184 “By the Court: I believe he is entitled to show it was voluntary.
“Witness: I probably did say about that.
“Q. And then I will ask if at the conclusion of the interview Mr. Owens—and you knew he was prosecuting attorney—. A. I did.
“Q. ‘Is there anything else you would like to add? Guess we are about through with everything—anything else you think of ? ’ And you answered—A. ‘ Only that it was either—I was afraid of my life. He was coming at me like he meant to kill me. I believe he really would. ’ Mr. Owens: ‘ The statements you have made, the answers you have given to our questions, all of these statements were made by you, and the answers given, voluntarily?’ A. ‘They were.’
“Q. And your answer was ‘They were’? A. Yes.
“Q. ‘We haven’t made any promises or threatened you in any way?’ A. ‘That’s right.’ Q. ‘Everything then that you have said you have said voluntarily of your own free will?’ A. ‘That’s right, no third degree.’' A. ‘That’s right.’ Mr. Owens: ‘That’s for our own protection and yours.’ Your answer, ‘Yes, sure.’ That took place there, didn’t it? A. It did.” (Emphasis added.)
The foregoing tends to indicate that the answers of the defendant given to the questions propounded by the prosecuting attorney, the sheriff, and the coroner were to be treated as a voluntary admission or confession.
Our courts have uniformly held that the defendant is not entitled to a copy of an alleged confession in the hands of the prosecuting attorney before trial. But “if the prosecuting attorney, after proof that the confession in his possession was signed by the defendant, should offer it as evidence tending to establish proof of guilt, or should examine a witness in relation thereto, defendant’s counsel could then make a demand *185 for it, and it would be the duty of the court to submit the written confession for inspection by counsel.” State v. Yeoman, 112 Ohio St., 214, 218, 147 N. E., 3.
Under our laws, proceedings before a grand jury are to be kept secret. State v. Rhoads, supra. But even so there is authority to the effect that where the state uses a transcript of testimony of a witness before the grand jury to cross-examine him when he testifies as a defense witness at the trial of an accused, the defendant is entitled to examine so much of the transcript as throws light upon the cross-examination. See People v. Stevenson, 103 Cal. App., 82, 284 P., 487.
In People v. Miller, 257 N. Y., 54, 177 N. E., 306, Justice Cardozo made the following comment:
“The district attorney might have refrained, if he had pleased, from asking the witness anything about her previous testimony. He was not at liberty, after exhibiting so much of it as was helpful to the people, to deprive the defendant of the privilege of exhibiting the residue.”
Also, in United States v. Cotter, 60 F. (2d), 689, the court made the following comment:
“It is indeed true that the prosecution having used the former testimony, the defendants were entitled to put in such other parts as threw light upon it. Wig-more Section 2113. Nor is this right secured by the judge’s going over the record for himself and selecting so much as he thinks relevant. The party must be allowed an inspection for himself; not of the whole minutes of course, but of the whole evidence of the witness. This does not invade the secrecy of the grand jury; it is not an inspection of the minutes preparatory to trial and in invitum, which is in no circumstances permissible * * * [citations]. But when the prosecution chooses to open them, the time for secrecy has passed; fair dealing requires that the other side shall inspect them freely.”
*186 In State v. Rhoads, supra, the defendant was cross-examined by the state relative to his testimony before the grand jury. This court held that the defendant was not entitled to a transcript of his evidence before the grand jury. But in the opinion on page 407 is found the following comment:
“The defendant Bhoads testified in his own behalf. He had also testified before the grand jury that indicted him, having appeared there voluntarily after asking and obtaining permission of the prosecuting attorney to make such appearance. He was cross-examined relative to his testimony before the grand jury. The prosecuting attorney did not use the transcript of the grand jury evidence as memoranda in conducting the cross-examination, but framed his questions with the aid of the notes made from the transcript.”
In the instant case, the defendant’s wife was cross-examined as to the answers she had given to questions propounded to her by the coroner, Gaskill, and others on the night of the killing.
The following appears in the record:
“Q. I will ask you whether or not at the time you were interviewed if Mr. Gaskill asked this question: Q. ‘Did he (meaning Mr. Easley) did he walk or did he run?’ A. ‘He walked.’ Q. ‘Did he walk fast or slow?’ A. ‘Slow.’ Did you make that statement? A. I might have said it, but it wasn’t that way.
“ Q. I will ask you if on this occasion of the interview you were asked this question by Mr. Gaskill: ‘ Did .he have either hand up as if to strike your husband with either wrench?’ A. ‘No, he just stood with them like that.’ Q. ‘All the time?’ A. ‘All the time.’ Q. ‘His arms were down?’ A. ‘Yes. I seen him get them out of the box.’ Q. ‘Did he walk facing your husband?’ A. ‘Yes, he did.’ Q. ‘Were they within two, three or four feet?’ A. ‘I really couldn’t tell you that.’ Q. ‘You could see the tops of their heads, or not?’ A. ‘I *187 couldn’t see his at all. To tell the truth I never looked too close.’ Q. ‘You don’t know how close they were?’ A. ‘No, they couldn’t have been too awfully far apart.’ Q. ‘But you think you do know that' he did not raise either hand to strike your husband?’ A. ‘When he started at him he did.’ Q. ‘But not at the time of the shooting?’ A. ‘No.’ Q. ‘He had both arms down?’ A. ‘I couldn’t see him for the car. I couldn’t tell whether he had his arms down or not.’ Q. ‘You could see your husband all the time?’ A. ‘I could see his head, but I couldn’t see him.’ Q. ‘Were they talking loud?’ A.‘Not too loud—fairly loud.’ Did you say that? A. I might have said it, but it wasn’t that way. ’ ’
Thus, it is clearly indicated that the prosecuting attorney was reading verbatim the questions and answers from the transcript and was not using it as a memorandum from which to frame questions.
The court stated as follows to the defendant’s wife, when she was being cross-examined as to her answers given to questions in the presence of the coroner and other officials:
“He is reading the questions and answers. If you didn’t, say you didn’t. If you did, say you did. Just don’t comment on them.”
The record indicates also that the prosecuting attorney, in cross-examining the defendant as to his answers given to the coroner and other officials at the county jail, was reading verbatim from the transcript.
The transcript in question, if it is not a part of the coroner’s records, is not a public document open to inspection to the defendant’s counsel as a matter of right. But when a portion of it was used before the jury in such a way that its contents may become an issue, the defendant’s demand for its production and his examination should have been sustained.
What this transcript contains in full is not before this court. There is nothing in the record which shows *188 that any one other than the prosecuting attorney and the court stenographer, who prepared it, has ever seen it, including the trial judge. Whether the portion of the wife’s statement not read would explain or tend to explain any variance between her testimony and the statements about which she was examined on cross-examination, we can not say.
The bill of exceptions shows that the prosecuting attorney asked questions of the wife relating to her transcribed statement made on the night of the killing. Many of the alleged questions and answers were used as memoranda on cross-examination and were read verbatim from the transcript. Under these circumstances, the defendant should have the right to examine her transcribed statement to determine whether anything contained therein tended to explain or clarify any variance in her testimony before the court and her statements contained in the transcript.
The defendant having interposed a plea of self-defense, the statements not read may have been material to such a plea. We feel that the ruling of the trial judge, denying the right of the defendant to examine the transcript of the wife’s statement given to the coroner and other officials after many of her questions and answers, allegedly contained in the transcript, were read in the presence of the jury, was improper.
Fairness requires that the transcript should be made available to the defendant’s counsel for his examination after it has been so used.
Considering all the facts and circumstances shown by the record, we feel that the court erred in denying the request of the defendant to examine the transcript of the statements of the defendant and his wife taken in connection with the coroner’s inquest conducted on the night of the death, and that such denial constitutes prejudicial error.
*189 The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for a new trial.

Judgment reversed.

Hart, Zimmerman and Stewart, JJ., concur.
Middleton and Taft, JJ., concur except as to paragraph three of the syllabus.