## NAILOR v. WILLIAMS.

1. Where a question is asked of a witness, which is illegal only because it may elicit improper testimony, and the court permits it to be answered against the objection of the other party, if the witness knows nothing of the matter to which he is interrogated, or if his answer is favorable to the objecting party, it is not error of which a revising court can take notice. It works him no injury.
2. If it does work the objecting party injury, he can show it by making the answer a part of the bill of exceptions, and unless he does this there is no error of the sort mentioned.
3. Where there is nothing in the bill of exceptions which enables a revising court to say that questions objected to have exceeded the reasonable license which a court, in its discretion, may allow in cross-examination, no error is shown.

APPEAL from the Supreme Court for the District of Columbia, the case being this:

Several negroes had been convicted in Virginia of heinous crimes and sentenced to death; but being reprieved by the governor of Virginia, were sold by that State to two persons, Williams and Davis, upon Williams's giving bond to transport them beyond the limits of the United States. Williams did not so transport them, but took them to Louisiana, and was there indicted, convicted, and sentenced to a heavy fine, under a statute of Louisiana, for bringing negroes convicted of crimes into that State. The negroes themselves, however, were not confiscated, but were sold by Williams for a large sum, to be thereafter received. In this state of facts, Davis (his partner in the purchase from the State of Virginia) assigned, in 1847, by instrument of writing, all his interest in the slaves to one Nailor, party to this suit, and Williams having received the purchase-money for the slaves, Nailor thereupon sued him below in *assumpsit* to recover his share of the proceeds, and called two witnesses to prove the genuineness of Davis's signature to the instrument of assignment, and Williams's acknowledgment of the claim now set up by Nailor.

One of them testified that the assignment was shown in

the latter part of the year 1867 by the plaintiff to Williams, and that Williams, after reading it, said that when the claim for the negroes was allowed, and the money obtained for them, he (the plaintiff) should receive one-half thereof by virtue of said assignment. This witness, on *cross-examination*, was asked:

" Was not the said plaintiff, at the date of said assignment, engaged in trading in negroes?"

The question was objected to, and the objection was overruled. This was the ground of an exception.

The next witness was asked on cross-examination:

" Was not he (the witness), at the date of the said assignment, engaged in aiding the plaintiff in trading in negroes?"

This question too was objected to, and the objection was overruled; and this constituted a second exception.

On these two exceptions the case was brought here.

The bills of exception *did not show what answers the witnesses gave to the questions above-mentioned, or whether, in fact, they answered the questions at all.*

*Messrs. Brent and Phillips, for the plaintiff in error:*

Nothing could be more irrelevant than the general inquiry made of the witness, which is the subject of the first exception. At the date of the transaction, the buying and selling of slaves as chattels was lawful, and the inquiry did not propose to connect itself with the consideration of the assignment from Davis to Nailor in any way or with any matter testified to in chief. The only tendency and object of the inquiry was to excite in 1867, the prejudices of the jury against a plaintiff who, twenty years before, might have dealt in slaves.

The same objections exist with increased force to the similar inquiry regarding the business of the witness, and his aiding the plaintiff in negro trading, and which makes the subject of the second exception. The purpose of the question was, really, to impeach the credibility of the witness

by a collateral inquiry into his business twenty years ago, in matters irrelevant to the subject before the jury, and by means unknown to any legitimate or recognized mode of impeaching a witness in a court of justice.

*Mr. Bradley, contra.*

Mr. Justice MILLER delivered the opinion of the court.

If a question is asked of a witness on the stand, the answer to which is pertinent and legal testimony, and the court refuses to permit the witness to answer, this is error which a revising court will correct, because the injury to the party consists in the refusal of the court to permit the answer to be given, and he can do nothing more to prove the wrong done him than to show that he asked a legal question, the answer to which, by the action of the court, was denied him.

But where a question is asked which is illegal only because it may elicit improper testimony, and the court permits it to be answered against the objection of the other party, the injury done the party is by the answer, and notwithstanding the erroneous ruling of the court, if the witness knows nothing of the matter to which he is interrogated, or if his answer is favorable to the objecting party, it works him no injury. If it does, he can show it by making the answer a part of the bill of exceptions, and unless he does this there is no error of which a revising court can take notice.

For this reason, and also because there is nothing in the bill of exceptions which enables us to say that the questions themselves exceeded the reasonable license which a court, in its discretion, may allow in cross-examination, we are of opinion that no error is shown by these bills of exception.

As they constitute the only matters alleged against the judgment of the court below, it is

AFFIRMED.