STATE OF HAWAII *v.* DAVID K. HASHIMOTO, GEORGE M. TANISUE, FLORENDO GUILLERMO, LEO BAJO, AURELIO BARRO, ALFRED L. CANIANES AND HENRY A. ALEJANDRO.

No. 4179.

OCTOBER 10, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C.J.

Defendants, David K. Hashimoto, George M. Tanisue, Florendo Guillermo, Leo Bajo, Aurelio Barro, Alfred L.

Canianes and Henry A. Alejandro, were indicted, tried and convicted in the First Circuit Court of the crime of rape. They are now before this court on writ of error.[1]

According to the evidence upon which there appears to be no dispute, on July 8, 1959, Janet Schenck and her escort Gene Smith drove to Ala Moana Park at approximately 10:30 p.m. While there, the girl waded in the water along the beach for some time and about three-quarters of an hour later when she and her escort were about to leave, several young men suddenly appeared and surrounded them. One of the men grabbed Smith and together with others started to beat him. At the same time, someone seized Janet and holding both her arms at her back took her to a car parked about two city blocks away and pushed her into it. There was a man at the wheel who drove off as soon as the rest of the boys entered. Janet identified the man at the wheel as defendant Hashimoto and the man who seized her by the arms and took her to the car as Canianes. She testified that the latter told her not to scream for if she did not do so she would not be hurt; that he similarly warned her again while the car proceeded toward Diamond Head; that three of the defendants were in the front seat and four in the rear in addition to herself, she sitting between the legs of Canianes; that she heard the boys talking about sexual relations and rape; that the boys in the rear except Canianes made passes at her and touched places "they shouldn't have had their hands"; that Canianes "grabbed something, a coat, jacket or blanket and put it over my legs and told the guys to leave me alone"; that she did not scream because she was scared.

Janet further testified that after they had passed the Blow Hole, the car turned off the road and came to a stop

[1] This appeal was taken by way of writ of error under the statute antedating the Hawaii Rules of Criminal Procedure.

about a city block away where there were many fir trees; that as she was being pushed out of the car, one of the boys choked her neck with both hands and shook her, applying considerable pressure; that she hit her head on the door-sill; that she then "passed out"; that she remembered that as she was regaining consciousness, she heard somebody say "I think she's dead"; that somebody was rubbing beer on her face and that "someone had been jabbing me in the thigh or pushing me or something and it hurt"; that she also remembered that "there was someone on top of me, maybe up to my stomach, no one close to my face, but I remember the pressure on my body"; that she noticed that she was lying nude on the ground on what seemed like a blanket.

After Janet dressed, she engaged the boys in conversation because, as she testified, she did not know what would happen next. Testifying further, she recalled that in the course of the conversation, Canianes and Guillermo told her they were sorry; that she heard Alejandro say "Let's get rid of her, she might turn us in, she might get us in trouble"; that while driving back to town, she again heard Alejandro say "let's feed the sharks"; that as they approached the place where she was to be let off the car, "They just kept telling me not to say anything because if I did, that I would never get off the island alive and they would hate to have anything happen to me, because it wasn't just them, there were other guys around here to take care of me, too."

The prosecuting witness also testified that, except during the small hours of the morning of the 9th when she did have sexual intercourse without her consent or knowledge, she had not had sexual intercourse on July 6th, 7th, 8th or up to the noon hour of the 9th when she was given a pelvic examination by Dr. West; and that although her knowledge was derived from her doctor's statement, some

of the boys sitting in the car on the back seat with her on the return trip told her that she had been used.

Dr. West, who conducted the pelvic examination in the forenoon of July 9th, testified that he had found sperm in the vagina of the prosecuting witness and that the "more than usual" reddening of the vaginal area "looked like there had been some sort of excessive friction there." He stated that in his opinion she had had sexual intercourse within twenty-four to thirty-six hours prior to his examination.

Defendants, as appellants here, assign as error numerous orders and rulings of the trial court, but have culled out and specified four assignments of error in support of their contention on appeal that the judgment of the court below should be reversed and defendants ordered discharged.

The first error specified is that which is embodied in assignment of error No. 2, to wit, that "the court erred in denying the motion for severance of trial for each of the defendants separate and apart from the other." It is noted that shortly after their arraignment and entry of their respective pleas of not guilty, defendants either jointly or individually filed several written motions including the motion in question for separate trial. All the motions were denied by written orders separately filed. Subsequently, at the inception of the trial, defendants orally renewed *inter alia* their motion for severance of trial on the ground that "it is impossible to have a fair and impartial trial for each of them under the circumstances of this case." In the course of the argument presented out of the presence of the jury, defendants alluded to the difficulty allegedly encountered in the selection of the jury and to the prejudicial effect of being unable to "cross-examine or dispute what another counsel for another defendant says * * *." Argument concluded, the trial resumed and the court an-

nounced its denial of the motion to which ruling defendants duly excepted.

It is a rule generally recognized and established that where several persons are collectively indicted for a crime, the usual procedure is to try them jointly. The rule is also settled that exceptions may be made by the court in its sound discretion and separate trials ordered when it is shown to the court's satisfaction that a fair and impartial trial cannot be had without a severance. *State* v. *Hashimoto,* 46 Haw. 183, 377 P.2d 728 (1962); *Territory* v. *Robello,* 20 Haw. 7; *Territory* v. *Johnson,* 16 Haw. 743; *Rex* v. *Tin Ah Chin,* 3 Haw. 90.

As movants, defendants had the burden of affirmatively showing the existence of factual circumstances which would not only warrant but make severance obviously imperative in the interest of judicial fairness. The trial court's denial of a plea for severance is not subject to reversal on appeal unless the appellate court finds that there was a clear abuse in the exercise of its discretion. *United States* v. *Carter,* 311 F.2d 934, 944 (6th Cir. 1963 appeal pending); *Hashimoto, supra.*

In the light of the argument presented to the trial court by one of counsel speaking, without objection, in behalf of all the defendants, this court has carefully examined the entire record but has observed nothing which indicates an abuse of discretion on the part of the trial court in refusing to grant a severance. Reference by counsel to the alleged difficulty in the selection of the jury is patently unsupported by the record. On account of the number of defendants and their entitlement to an aggregate of forty-two peremptory challenges, much time was naturally taken to conclude the voir dire. Counsel for each defendant freely participated in the examination of each prospective juror and at no point does the record reveal any conflict

or seeming disagreement between or among the several counsel.

Counsel, moreover, argued to the trial court that there were separate defenses and a joint trial would possibly result in differences and confusion among counsel representing different defendants. The record affirmatively discloses that the apprehension expressed by counsel was unfounded. The trial proceeded smoothly, punctuated from time to time only by instances of verbal brushes between the prosecution and the defense and there was no noticeable disagreement within the ranks of the defense. It is also to be noted that the separate statements allegedly made by each defendant to an investigating detective, held by the court upon voir dire to have been voluntarily made by each, were admitted into evidence, albeit over objection, only after the portion or portions thereof which pertained to a codefendant or codefendants had been obliterated or excised and duly checked by all counsel as required by the court. "The feature of certain evidence being evidence against one defendant but not against another defendant is usually present in every joint trial. It is well settled that the fact that in a joint trial there will be evidence against one defendant which is not evidence against another defendant does not require separate trials * * *." *Rizzo* v. *United States*, 304 F.2d 810, 818 (8th Cir. 1962). See also *Commonwealth* v. *Snopek*, 200 Pa. Super. 455, 190 A.2d 161 (1963), in which the court held that there was no prejudicial error in allowing a consolidation for single trial of three separate indictments against three different defendants for the crime of rape on the same victim.

The cases cited by the defense on the question of severance have been examined. It is evident that in every case in which the trial court's discretion was questioned or disturbed, there was a clear showing of abuse patently prejudicial to some of the codefendants. Defendants here ar-

gued to the trial court that the additional costs of separate trials should not be a factor in resolving the question of severance. Although the record fails to show any remark by the court in that regard, this court agrees that the element of costs should not be allowed to outweigh justice. However, in every case of a single trial involving several defendants, in the absence of a clear showing of prejudice a trial court cannot be totally insensible of the public burden in conducting duplicitous trials involving the same issue or issues. In *United States* v. *Verra,* 203 F.Supp. 87, 90 (S.D. N.Y. 1962) where the court denied severance requested by the defendants jointly tried on two counts, one for conspiracy and the other for perjury, the court said: "Where there are common elements of proof in the joined offenses, the public interest in avoiding duplicitous, time-consuming and expensive trials must be weighed against the prejudice which the defendants envision. Here it is clear that, should separate trials of the conspiracy and perjury counts be ordered, the Government's efforts would be duplicated and without benefit to the movants * * *."

In the case at bar, all the defendants were indicted jointly for the crime of rape. Under R.L.H. 1955, § 252-1, and State's requested instruction No. 5, given by the court with defendants' approval, they were all treated and tried as principals. As the trial developed, it transpired that the same witnesses, including the rape victim would have been called to testify in each case, had separate trials been ordered.

The motions for severance, as filed, contained only general grounds except in the case of Hashimoto. He asserted, in addition to anticipated prejudice from the confessions of other defendants, a point already considered, the additional ground that in a separate trial he could compel other defendants to take the stand. In the joint trial, Guillermo and Barro did take the stand and counsel for Hashi-

moto did not cross-examine them. No prejudice, therefore, appears upon consideration of this additional ground of Hashimoto's motion.

This court is satisfied that there is nothing in the record which lends support to defendants' claim that the trial court abused its discretion in disallowing a severance. Assignment of error No. 2 (specified as error No. 1) is accordingly overruled.

Assignment of error No. 3 (specified as error No. 2) relates to the trial court's denial of defendants' motion for an order of mistrial made immediately after the jury had been sworn. It is urged in support of defendants' claim of error that (1) "the guards had at various times brought in the defendants handcuffed to each other and in full view of certain jurors"; (2) "the guards have, throughout the selection of the jury, been sitting side by side with the defendants in full view of all the jurors * * *"; (3) "the guards have been present in the courtroom throughout the selection of the jury, in full uniform, and frequently even dangling handcuffs at certain points in the proceedings * * *."

A facet of the problem pertaining to the use of handcuffs was discussed and ruled upon by this court in *State* v. *Brooks,* 44 Haw. 82, 352 P.2d 611. Unless it is shown that the court abused its discretion or that the accused was actually prejudiced before the jury under the stated circumstances, a refusal to grant a motion for mistrial does not constitute reversible error.

In retrospect, this court is aware of the fact that in many jurisdictions the problem of manacled defendants being escorted to the courthouse or even into the courtroom under guard has been made an issue for ultimate determination by the appellate courts. In light of this court's comment in *State* v. *Brooks, supra,* it is not deemed necessary

to labor the point at great length.

The record in this case discloses that during the argument on the motion for mistrial held in chambers, counsel for the defense narrated to the court what they themselves had observed relative to the presence of uniformed guards and to the fact that defendants were brought in handcuffed. In the course of the colloquy, it is noted that the court stated that he had seen some of the defendants out in the corridor handcuffed but questioned whether the jury had seen it. The colloquy shown in the footnote below is illustrative of the point involved in this particular issue.[2] The court was not approached on the point until the motion for mistrial was made, after the jury had been sworn.

The jury was never polled in this regard. As a matter of fact, if, as represented to the court, there was so much concern about the guards and handcuffs, it would seem that the defense would have touched upon the subject during the voir dire examination of the prospective jurors to ascertain their attitude in respect to the circumstance. But, as reflected by the record, not one of the several defense counsel examined the jurors on that point.

This court repeats that pleadings and statements made by counsel to the court are not self-proving, and that there

---

[2] "THE COURT: I don't know that any of the jury has seen them handcuffed. You say that but I have no—

"MR. FELZER: I am prepared to poll the jury, yes." (Tr. p. 9b).

\* \* \* \* \* \*

"THE COURT: Well, I might say that on the—I think it was the first day, I was out in the corridor of the clerk's office outside and the guard came in with some of them handcuffed and I told him to take the cuffs off.

"MR. FELZER: I remember that, your Honor.

"THE COURT: And I am surprised if any of the jury has seen any of them handcuffed.

"MR. CHANG: They brought them into the courtroom, mind you, Judge, and still handcuffed, sitting in the front row.

"THE COURT: When?

"MR. CHANG: Several mornings. Is that right, Mr. Felzer?" (Tr. pp. 9d-9e).

is no reversible error in the absence of a showing that the court clearly abused its discretion or that defendants were actually prejudiced before the jury. *State* v. *Brooks, supra.*

Assignment of error No. 3 is therefore without merit.

We now reach assignment of error No. 18 (specified as error No. 3). Defendants contend that the trial court committed a reversible error by restricting their cross-examination of Janet Schenck when she was called to the witness stand by the prosecution for the second time. Earlier in the case, Janet had taken the stand to give testimony in behalf of the prosecution.

On her first appearance on the stand, her entire testimony was given on direct examination by the prosecution. Upon its conclusion, defendants urgently requested a recess, obviously for the purpose of conferring on what course of action to take. When court resumed, each defendant separately stated to the court that he would waive the cross-examination.

When called to the stand this first time Janet testified to her abduction and the ride through Waikiki, ending up at a place with fir trees past the Blow Hole. She then testified that she was choked, hit her head on the doorsill of the car, and passed out. She partially regained consciousness and was lying on a blanket, nude. At some point "there was someone on top of me * * * pressure on my body." When she finally regained consciousness "my stomach hurt an awful lot." Also "my thigh hurt from something * * *." She further testified to the conversation she had had with defendants while dressing, and threats made while returning in the car to a spot about four blocks from her place of residence where defendants let her go. Included in her testimony was her statement that after she had dressed, "we talked for a while about surfing, about climbing coconut trees, about my home town, about just anything I could think of."

Dr. West then was called. As has been stated, he examined the prosecuting witness about eleven hours after the occurrence in question to find out whether anyone had had intercourse with her. He found sperm in the vagina and gave it as his opinion that she had had sexual intercourse within the past twenty-four hours, or at most thirty-six hours.

Janet then was, over objection, recalled to the witness stand by the prosecution. On direct examination on this occasion she testified that on July 9, between midnight and 1:00 a.m., she had sexual intercourse without her consent, that she was not certain with whom, that she did not have any sexual intercourse on July 6th or 7th or on the 8th up to this time, that she did not have sexual intercourse on July 9th during the period between the time she was let out of the car near her place of residence and the time of her physical examination. She further testified that there were bruises on her right arm and throat which she didn't have before the incident and couldn't have received elsewhere, that "I still had that stomach ache and I was tired."

Cross-examination by defendants ensued without objection, but when one of counsel commenced to question Janet on her testimony given earlier during her first appearance as to "the things you talked about was sports and your home life in Indiana, surfing and a few other matters," the prosecution objected "on the grounds that this is improper cross-examination." Whereupon, the court ruled: "I will rule that your cross-examination on her testimony on her first appearance is waived and that you may now cross-examine her only on what she testified to upon being recalled." Exception was taken by all defendants and made the subject of this assignment of error.

This court finds no quarrel with the general principle that, though it may be waived, "the right of cross-examination is absolute and not a mere privilege." But the

phrase is meaningless unless amplified and shown to coincide with the particular circumstance to which it is applied and with the established rules concerning prejudicial error.

We are of the view that the trial court's ruling holding defendants to the waiver of cross-examination which they made when prosecutrix was examined the first time was erroneously restrictive. Defendants were not in a position to judge whether they would cross-examine the prosecuting witness on the basis of the first installment of her testimony when they did not know it was only a first installment.

However, the trial judge's ruling requiring defendants to limit their cross-examination "to her testimony at the second time she took the stand" allowed defendants considerable latitude. The testimony of the prosecuting witness on the second occasion went beyond the fact of sexual intercourse. She testified, in effect, that the circumstances were such that she had had sexual intercourse at the hour named without knowledge on her part other than that derived from her doctor. She further testified that as a result of the incident she ached and had bruises. This opened up the subject matter of the assault upon her which rendered her unconscious, and with it the whole question whether the sexual intercourse, if it occurred, was by force and against her will, on the one hand, or with her consent on the other hand. To that question all of the circumstances —the ride through Waikiki without the witness calling for aid, the conversation she conducted with defendants while she was dressing, the threats made on the return trip, and the like—were pertinent.

At the time when the ruling complained of was made counsel had been laying the background for questioning the prosecuting witness as to the conversation she had with defendants while dressing. The questions asked were an-

swered. There was no motion to strike. After the court's ruling defendants, without objection, cross-examined the witness on a variety of subjects, including the stomach-ache and possible causes of it, whether she claimed to be a virgin before the incident, possible normal causes of the unusual reddening in the vaginal area to which Dr. West had testified, what defendants had said on the return trip (this being in response to a question whether the only basis for her testimony that she had sexual intercourse was Dr. West's testimony), and what prosecuting witness said when first questioned by the police, specifically the question "did you relate to the police the story that you related to us yesterday on the stand." No question asked was ruled out.

Pursuant to R.L.H. 1955, § 212-14, which applies in this case, no judgment may be reversed unless the court "is of the opinion that error was committed which injuriously affected the substantial rights of the plaintiff in error." It may well be that, as held in *Alford* v. *United States,* 282 U.S. 687, 692, prejudice from denial of the right to cross-examine does not necessarily depend upon a showing that the cross-examination would have brought out facts tending to discredit the witness. In the present case, however, we are unable to find prejudice because it is not shown that the cross-examination was in fact limited by the ruling requiring counsel to confine themselves to the prosecutrix's testimony on the second occasion. *Cf., Berkson* v. *Post,* 38 Haw. 436, 438; *State* v. *Vigorito,* 2 N.J. 185, 186-187, 65 A.2d 841, 842; *People* v. *Stone,* 89 Cal. App. 2d 853, 202 P.2d 333.

Furthermore, whatever adverse effect the court's error in ruling on the defendants' scope of cross-examination may have had was offset and cured by the fact that before the prosecution rested its case in chief it offered to recall the complaining witness for cross-examination in respect

to her testimony on her first appearance and the witness was subsequently called to the stand for that purpose, but each of the defendants, through his attorney, declined[3] to take advantage of the offer and opportunity. *Cf., State* v. *Wilkins,* 100 S.W.2d 889, 894 (Mo.) ; *Malatkofski* v. *United States,* 179 F.2d 905, 915 (1st Cir. 1950) ; *Harris* v. *State,* 203 Md. 165, 173, 99 A.2d 725, 729. Upon careful consideration of the circumstances of this case we fail to perceive wherein the examination at the time the witness was recalled[4] would not have afforded defendants adequate opportunity to cross-examine the witness effectively.

Assignment of error No. 18 is overruled.

Defendants' assignment of error No. 18 [24] (specified as error No. 4) pertains to their exceptions to the trial court's rulings (1) denying a motion for mistrial and (2) denying defendants' request to order some eighteen police recruits present at the trial as observers to vacate the courtroom.

It appears that during one of the trial sessions, a group of police recruits dressed in white were present in the courtroom. A counsel for defendants requested and obtained the court's permission to poll certain members of the audience. Responding to the interrogation which ensued, the police lieutenant in charge of the recruits informed the court that they were members of his police recruiting class and that they were present for experience in courtroom procedure as a part of the class program. Perceivably, the move on the part of counsel was prompted by his apprehension that the presence of the group had or,

---

[3] It is noted that defendant Bajo, through his attorney, reserved the right of further examination. However, he did not take advantage of this.

[4] The witness left the stand on Thursday, September 17, 1959, and was called to the stand for further cross-examination on Monday, September 21, 1959, the second trial day thereafter.

if allowed to continue, would have an adverse effect upon the jury. It is not shown that the recruits or anyone else in the courtroom were indecorous, disorderly, or in any manner disturbing the proceedings.

Courts are established for the judicial administration of justice. They are open to the public, subject only to the control and supervision of the court proceedings by the presiding judges in whom is vested the authority to clear the courtroom of persons customarily excluded or of persons whose conduct or presence in the courtrooms is such that the orderly, fair and impartial functioning of the courts is affected. The fact that they are open serves as a safeguard of the integrity of our courts. 88 C.J.S., *Trial,* § 39, p. 98; 53 Am. Jur., *Trial,* § 41, p. 54 *et seq.* See *Sugg* v. *Sugg,* 152 S.W.2d 446 (Tex. Civ. App. 1941).

When Hawaii was a Territory, the Sixth Amendment of the Constitution of the United States was held to apply directly to Territorial judicial proceedings. *Rassmussen* v. *United States,* 197 U.S. 516; *Ex Parte Higashi,* 17 Haw. 428, 441. The same provisions of the amendment now appear in the State Constitution of Hawaii. Article I, § 11. It is there provided that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

The words "public trial" are self-explanatory. In *Territory* v. *Scharsch,* 25 Haw. 429, 430, this court granted a new trial because the trial court had ordered "all those in the courtroom to leave except the officers of the court." Ironically, in the case at bar, defendants and not the court demanded the exclusion of a segment of the audience, whereas in *Scharsch, supra,* the defendants objected to the exclusion on the ground that it was a public trial.

It appears from the record relating to this phase of the proceedings that the police recruits dressed in their standard white classroom attire were present in the courtroom

as observers. There was no disorderly conduct or overt act of any kind to lead this court to believe that any pressure or influence was exercised or intended to be exercised upon the jury. The reason for their presence was clearly stated and explained by the lieutenant under poll in open court. We are satisfied that the trial court properly applied his discretion in refusing to grant defendants' motions.

Assignment of error No. 24 (incorrectly numbered "18" in defendants' brief) has no merit.

We come now to defendants' final assignment of error No. 30 (specified as error No. 5). At the close of the prosecution's case, defendants all moved for a directed verdict and noted exceptions to the denial thereof. Defendants claim error contending that the evidence was insufficient to establish the fact of sexual intercourse between them and the complaining witness and that even if the evidence did show such intercourse, it affirmatively showed that the complaining witness did not put up the degree of resistance required by the law relating to the crime of rape.

Upon a careful review of the entire evidence, it manifestly appears to this court that defendants' contention cannot be substantiated. It is a rule firmly established in the overwhelming majority of jurisdictions including ours that the submission of a case to the jury over objection constitutes reversible error only if there is no substantial and competent evidence to warrant a finding of guilt by the jury. *Territory* v. *Aquino,* 43 Haw. 347. The record in this case perspicuously shows that there was adduced substantial and competent evidence of the crime charged. In the face of the evidentiary facts stated earlier in this opinion, we think that the trial court would have been deemed to have made a travesty of justice, had it withheld the case from the jury on the ground that there was no evidence of sexual intercourse.

Apropos of the claim that the rape victim failed to put

up the degree of resistance required by law, suffice it to say that the law on rape requiring resistance by the victim when carnally attacked does not apply to an unconscious victim. In the lone case cited by defendants, *Territory* v. *Nishi,* 24 Haw. 677, 682, this court, in recognition of the exception to the rule, declared that "There was no evidence whatsoever that the ability of the prosecuting witness to resist was overcome or even impaired by reason of unconsciousness, threats or exhaustion."

In the instant case, the evidence appears overwhelming that after the victim was choked in the car, she lost consciousness and remained totally insensible until she partially "came to," when she felt a pressure on her body and a pain about her thigh; that she again lapsed into unconsciousness and as she later gradually recovered, she realized that one of the men was rubbing beer on her face obviously to revive her; and that while still in a daze, she heard someone say, "I think she's dead." According to the evidence which includes the respective statements made by defendants to the investigating detective, all the acts constituting the crime of rape were perpetrated while she was in a physical and mental condition in which resistance was utterly impossible.

Defendants further argue that she should or could have screamed for help on the way to the scene of the crime when the car was proceeding along Waikiki. The rule of resistance does not apply unless a woman is being carnally attacked. The fact that the victim in this case was squeezed in the car surrounded by seven men, with one of them holding and warning her to the effect that if she did not scream she would not be hurt, was an element for the jury to consider in determining whether her failure to scream in Waikiki was an indication of her acquiescence in or consent to the acts of sexual relation which later took place among the fir trees.

All of the foregoing were matters for the jury and not for the presiding judge. Factual conflicts, differences and inferences as well as the determination of credibility and weight of evidence lie within the province of the jury. We hold that the trial court did not err in refusing to grant the motion for a directed verdict.

We, therefore, find no merit in assignment of error No. 30. All other minor assignments not specified or argued are deemed abandoned. *In Re Silva,* 32 Haw. 855; *Akana* v. *Territory,* 22 Haw. 479; *State* v. *Hashimoto, supra.*

Judgment affirmed.

*Robert Kimura* for defendants, plaintiffs in error, David K. Hashimoto, Henry A. Alejandro and George M. Tanisue.

*Robert H. K. Chang* for defendant, plaintiff in error, Alfred L. Canianes.

*David K. Namaka* for defendant, plaintiff in error, Leo Bajo.

*Nathaniel Felzer* for defendants, plaintiffs in error, Florendo Guillermo and Aurelio Barro.

*Daniel G. Ridley* for all defendants, plaintiffs in error.

*George I. Hieda,* Deputy Prosecuting Attorney, City and County of Honolulu *(John H. Peters,* Prosecuting Attorney), for plaintiff, defendant in error.

DISSENTING OPINION OF MIZUHA, J.

On her first appearance, the complaining witness testified as to all of the circumstances surrounding her abduction, the use of force by defendants, and her conversations with defendants during the entire evening. There was no testimony with reference to the perpetration of the acts of sexual intercourse upon her by the defendants. She had no knowledge or recollection of same. On the basis of this testimony, which did not establish a prima facie case for

rape, the defendants declined to cross-examine.

The second witness for the State was a Dr. West who testified that he had given her a physical examination on the following day which was about 11 hours after the time when the alleged rape occurred. During this examination which took place approximately at noon on July 9, 1959, the doctor found dead spermatozoa in the complaining witness' vagina and a more than usual reddening of the vaginal area, from which he concluded that she had sexual intercourse with someone prior to the time of his examination and at the most 36 hours prior thereto.

After Dr. West testified, the prosecution called the complaining witness back to the stand. This was objected to by the defendants.

There was no explanation by the prosecution as to why they were recalling Janet Schenck to the stand nor did the trial court inquire as to the reasons for the recall of Janet Schenck. Likewise at the time the complaining witness' first direct examination was finished, the prosecution did not indicate that they intended to recall Miss Schenck for further testimony.

In a rape trial where the testimony of the complaining witness is crucial, it would be presumed that the trial court would afford defendant full opportunity to exercise his constitutional right of confrontation. But the following occurred at the conclusion of her first examination:

"Q [MR. TITCOMB] Jan, this testimony you have just related to this jury, did that all take place in this jurisdiction, that is, in the City and County of Honolulu, State of Hawaii?

"A   Yes, sir.

"MR. TITCOMB: Take the witness.

\*   \*   \*   \*   \*   \*   \*   \*   \*

"MR. FELZER: The defendants Guillermo and Barro require no cross-examination, your Honor.

* * * [Testimony of Dr. Rodney T. West.] * * *

"MR. TITCOMB: Call Janet Schenck.

"MR. FELZER: I object to the calling of the witness, your Honor.

"MR. TITCOMB: This is bordering on the ludicrous, if the Court please, this objection.

"THE COURT: It will be overruled.

"MR. FELZER: Exception.

"MR. CHANG: Your Honor, I make the same objection on behalf of the defendant Canianes.

"THE COURT: Same ruling.

"MR. CHANG: Exception.

"MR. KIMURA: Your Honor, at this time, for the record perhaps the prosecution can inform us as to how many times he intends to call Janet Schenck.

"THE COURT: He may not.

"MR. KIMURA: Very well, your Honor."

The prosecution did not ask leave of the trial court to withdraw the complaining witness subject to recall at a later time. When the prosecution concluded the examination of the complaining witness, without establishing a prima facie case as admitted by the State in their brief, and without asking leave of the trial court to withdraw the witness subject to recall, there was no necessity of the defendants to assert their basic right when no crime had been established by the complainant's testimony.

When the State recalled the complaining witness, and the defendant objected, it was incumbent upon the trial judge to inquire of the prosecution as to the necessity of further testimony from the complainant. Without any reasons being presented to the trial court, it was impossible for the defendant to make any specific objection. If the State had informed the trial court that it intended to prove two of the essential elements of the crime of rape, sexual intercourse and lack of consent which were not cov-

ered in the initial examination, the propriety of recall could have been thoroughly argued. Likewise, if the trial court in the exercise of its discretion saw fit to permit the State to recall the complaining witness for further testimony to establish the crime of rape, the question of cross-examination on earlier testimony of other elements of the crime had to be considered. In view of the peculiar procedure adopted by the prosecutor, it was the duty of the trial court to permit cross-examination on all the testimony of the complainant after the completion of the second examination. Recall of the complaining witness by the State four days later at the conclusion of its case, does not satisfy the minimal constitutional requirements for a fair trial.

The prosecuting attorney sarcastically termed the objection of the defendants to the recall of the complaining witness as "bordering on the ludicrous." This remark is more appropriate in referring to the procedure followed by the prosecution for the presentation of evidence without any query by the court, and to the abrupt overruling of defendant's objection.

The complaining witness' testimony on her second appearance definitely established that some time around midnight or 1 o'clock, July 8, 1959, she had sexual intercourse with the seven defendants, without her consent.

After her second direct examination, the following questions were asked by defendant's counsel on cross-examination:

"Q [MR. FELZER] Miss Schenck, when you told us yesterday something about your background, you said you went to school at Goshen, Indiana?

"A  I went to high school at Goshen, Indiana.

"Q  And you also testified yesterday that at some time out at the pine stretch, you were talking about various matters with the defendants; is that correct?

"A   That's right, sir.

"Q   And that among the things that you talked about was sports and your home life in Indiana, surfing and a few other matters; is that correct?

"A   That's right."

This was followed by the colloquy which appears in the margin below.[1]

Article I, section 11 of the Constitution of the State of Hawaii guarantees to the accused, in all criminal prosecutions, the right "to be confronted with the witnesses against him." The main and essential purpose of this constitutional right of confrontation is to secure to the defendant the opportunity for cross-examination. "The right to cross-examine a witness is fundamental and accepted as a right basic to our judicial system." *State* v. *Brooks,* 44 Haw. 82, 89, 352 P.2d 611, 616.

The object of the constitutional provision is to protect defendants against any adverse testimony during the course of a criminal trial. It is a substantive right of the

---

[1] "MR. TITCOMB: I object, if the Court please, on the grounds that this is improper cross-examination.

"THE COURT: He is merely recapitulating what was said.

"MR. FELZER: I am laying the background, your Honor.

"MR. TITCOMB: May I be heard, if the Court please? If the court and counsel will recall, the witness was offered in direct yesterday and turned over for cross-examination, at which time they waived their right to cross-examine her on that portion of her testimony when she testified as to Ala Moana and the pine or the fir stretch. She was then called as a witness and testified as to no sexual encounters during July 5th, 6th, 7th, 8th and 9th; she was limited to that testimony in direct. If they are to cross-examine her now, they cross-examine her as to her testimony at the second time she took the stand.

"THE COURT: That's correct.

*   *   *   *   *   *   *   *   *

"THE COURT: I will rule that your cross-examination on her testimony on her first appearance is waived and that you may now cross-examine her only on what she has testified to upon being recalled.

"MR. FELZER: I take exception to the court's ruling and I feel that it is entirely contrary to the laws that exist today, your Honor.

"MR. NAMAKA: I make that same motion, your Honor.

"MR. KIMURA: I make the same, your Honor.

"MR. CHANG: I make the same for Canianes, your Honor."

accused and not a mere privilege to be granted or withheld at the discretion of the trial court which in the exercise of reasonable discretion may limit the scope and extent of cross-examination but it cannot absolutely deny it to one entitled to it. *Alford* v. *United States,* 282 U.S. 687, 51 S. Ct. 218, 75 L. Ed. 624; *J. E. Hanger, Inc.* v. *United States,* 160 F.2d 8; *Lindsey* v. *United States,* 133 F.2d 368 (D.C. Cir. 1942); *Heard* v. *United States,* 255 Fed. 829; *Smith* v. *State,* 200 Ark. 1152, 143 S.W.2d 190; *Frady* v. *State,* 212 Ga. 84, 90 S.E.2d 664; *People* v. *Hume,* 56 Cal. App. 2d 262, 132 P.2d 52; *State* v. *Warner,* 79 Utah 510, 13 P.2d 317.

It can hardly be denied that, insofar as the complaining witness' initial testimony affirmed no sexual acts having been committed upon her, her testimony was innocuous and presented no cause for cross-examination. The State admits in its brief "that complainant's first testimony, unrebutted and unexplained by appellants, was, in itself, as a matter of law, insufficient to warrant conviction of appellants * * *." There was nothing to cross-examine at the conclusion of the first examination because all of the essential elements of the crime of rape had not been established.

Any rule addressed to restricting the scope of cross-examination has its roots grounded in the promotion of orderly presentation of evidence.[2] *Yamashiro* v. *Costa,* 26 Haw. 54. In the instant case, the rule as applied by the lower court had the attendant consequence of forcing the defendants to conduct piece-meal cross-examination of a single witness upon the theory that the prosecution's method of presentation of evidence had transformed the

---

[2] For a thorough discussion on the merits of the various rules governing the scope of cross-examination, see McCormick, *The Scope and Art of Cross-Examination,* 47 Nw. U.L. Rev. 177.

complaining witness into two separate persons.[3] It would seem that, from the standpoint of a fair trial and the allowance of full opportunity to cross-examine, the prosecution's alleged orderliness had become an unfair advantage. Certainly, the real weight of the complaining witness' initial testimony, for the purpose of cross-examination, could not have become apparent to the defendants until it was buttressed by her affirmation of sexual acts having been committed upon her without her consent.

As it is pointed out in the State's brief, "complainant's testimony on her first appearance was limited to facts relating to issues of force and resistance. Complainant on her second appearance limited her testimony solely to matters relating to sexual intercourse and the lack of consent. No reference was made by complainant in her testimony on her second appearance to matters relating to resistance and the use of force." Inasmuch as force, resistance, sexual intercourse, and lack of consent are all essential elements to be considered in the crime of rape, I cannot agree with the conclusion of the court's opinion that the ruling of the trial court was not prejudicial, on the ground defendants may possibly have reached the issues of force and resistance, through cross-examination on the testimony in the second direct examination.

This conclusion fails to consider the principle purpose of cross-examination. "The office of cross-examination is to test the truth of statements of a witness made on direct examination. Cross-examination serves as a safeguard to combat unreliable testimony, providing a means for dis-

---

[3] The trial court erroneously accepted prosecutor's argument: "* * * The court recalls and the counsel recalls that the State presented its case in an orderly fashion. We did not go into her knowledge, or lack of same of intercourse until the doctor testified and established that she had had sexual intercourse, so she was not called because we inadvertently omitted to ask her certain questions. She is actually the State's third witness."

crediting a witness' testimony, and is in the nature of an attack on his truth or accuracy. The purpose of cross-examination, however, is not limited to bringing out a falsehood, since it is also a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination, and it serves to sift, modify, or explain what has been said, in order to develop new or old facts in a view favorable to the cross-examiner. The object of cross-examination, therefore, is to weaken or disprove the case of one's adversary, and break down his testimony in chief, test the recollection, veracity, accuracy, honesty, and bias or prejudice of the witness, his source of information, his motives, interest, and memory, and exhibit the improbabilities of his testimony." 98 C.J.S., *Witnesses*, § 372. The ruling made it impossible to impeach the testimony of the prosecutrix during her first examination.

It is difficult to follow the argument of the majority opinion which is unable to find prejudice "because it is not shown that the cross-examination was in fact limited by the ruling requiring counsel to confine themselves to the prosecutrix's testimony on the second occasion." Defendants had no obligation to show that the denial of cross-examination on the first examination prejudiced them. As stated by Mr. Justice Stone:

"* * * Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. *Tla-Koo-Yel-Lee* v. *United States, supra; King* v. *United States, supra; People* v. *Moore,* 96 App. Div. 56, affirmed without opinion, 181 N.Y. 524; cf. *People* v. *Becker,* 210 N.Y. 274. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts

tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. *Nailor* v. *Williams*, 8 Wall. 107, 109; see *People* v. *Stevenson*, 103 Cal. App. 82; cf. *Brasfield* v. *United States*, 272 U.S. 448. In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony. *Nailor* v. *Williams, supra.*" *Alford* v. *United States*, 282 U.S. at 692.

The first direct examination of the complaining witness which consists of 35 pages of testimony was concluded at 11:30 a.m., September 16, 1959. The second direct examination which consists of 5 pages of testimony commenced at approximately 3:25 p.m., September 16, 1959. Cross-examination which was limited to this second direct examination was concluded at 10:14 a.m., September 17, 1959.

At the conclusion of the State's case four days later on September 21, 1959, the prosecuting attorney, apparently recognizing that the court had committed error earlier in denying defendants the right to cross-examine the complaining witness on her testimony in the first direct examination, offered her for cross-examination by the defendants as to her first direct examination.[4]

The complaining witness was recalled to the stand by the State, and then followed the colloquy which is quoted in the margin below.[5]

---

[4] "MR. TITCOMB: If the Court please, I know it is a quarter to 11. The State has not contemplated calling any other witness. However, I'm quite willing to recall Janet Schenck to the witness stand and make her available for purposes of cross-examination to defense counsels if they choose.

"THE COURT: That is, as to her testimony on her first appearance?"

[5] "MR. TITCOMB: Miss Schenck, you are still under oath.

"THE WITNESS: Yes, sir.

"MR. FELZER: If the Court please, it's with much regret that I must at this time, on behalf of certain defendants, move that the trial

I cannot agree with the majority that the trial court's error in denying to defendants their constitutional right of confrontation can be cured, when an opportunity is afforded defendants to cross-examine four days after the conclusion of the prosecutrix's examination. Cross-examination of the complaining witness in a rape case is ineffective four days later, for the testimony on which the witness would be cross-examined is no longer fresh in the memory of the members of the jury.

The court's opinion rests upon the failure to properly evaluate the basis for our constitutional right of confrontation in criminal cases. Availability of this constitutional right of cross-examination immediately after the conclusion of the witness' testimony has been the practice in all of our trial courts in this country. If the practice were different, then the procedure in our trial courts would have the cross-examination begin on State witnesses only after the direct examination of all State witnesses have been

judge disqualify himself on the ground of bias and prejudice in entertaining the offer of the prosecution to return Janet Schenck to the witness stand contrary to the court's own ruling that we had waived the right to cross-examine the witness on all of her direct testimony.

"THE COURT: It will be denied.

"MR. FELZER: I take exception to that, your Honor.

"MR. KIMURA: All three of my defendants make the same motion.

"THE COURT: Same ruling.

"MR. TITCOMB: May I state for the record that the State felt that it would be imminently fair to present this witness for their examination.

"THE COURT: You have perfect right to do so.

"MR. FELZER: In that respect, your Honor, we feel that it isn't the prosecution who sets the rules of court and procedure.

"THE COURT: The ruling has been made.

"MR. FELZER: I take exception, your Honor. In the absence of any change in circumstances, your Honor, we feel that there is no advantage of cross-examining the witness at this time because it is out of context with—

"MR. TITCOMB: Just a minute. You just take your right or you waive it.

"MR. FELZER: You're not telling me what to do, Mr. Titcomb.

"MR. TITCOMB: I don't want any 4th of July speeches before this jury.

"THE COURT: If there is anything further to be said, I think it

concluded. See 6 Wigmore, *Evidence,* §§ 1882-84.

This court, in accepting the proposition that the denial of the basic constitutional right of confrontation can be cured in the manner in which it was done in this case, now permits the State and our trial courts to adopt the peculiar type of procedure followed in this case without fear of reversal. The error can always be cured by the subsequent recall of the complaining witness for cross-examination at the conclusion of the State's case, when cross-examination would be ineffective.

In *State* v. *Howard,* 35 S.C. 197, 14 S.E. 481, it was held that error of the trial court in not allowing a defendant to cross-examine State witnesses is not cured by the fact that the defendant subsequently calls the witnesses as his own and examines them on his own behalf.

In *State* v. *Hollenbeck,* 67 Vt. 34, 30 Atl. 696, in a trial for rape, where a question was erroneously excluded on cross-examination of the complaining witness, it was held that "The fact that the state, later in the trial called the prosecutrix as a witness upon the same subject, and the

---

might be said outside the presence of the jury. Do you wish to avail yourself of the privilege of cross-examination?

"MR. FELZER: No, your Honor.

"THE COURT: How about you, Mr. Kimura?

"MR. KIMURA: No cross-examination, your Honor.

"MR. NAMAKA: If the Court please, the defendants didn't call Miss Schenck as a witness. We are not waiving the right to cross-examine her but at this time we want to reserve any right we have to examine her.

"THE COURT: Mr. Chang?

"MR. CHANG: Your Honor, I feel that the right to cross-examination at the appropriate time was not availed to the defendant Canianes; therefore, it would be prejudicial at this time to cross-examine her.

"THE COURT: You do not wish to cross-examine her?

"MR. CHANG: Yes, sir.

"THE COURT: That's all. You're excused.

(The witness was excused.)

"MR. FELZER: I feel, your Honor, that taking the opportunity to cross-examine out of position is prejudicial to the defendants, your Honor, because it's lost its probative value when it comes forth at this time."

respondent had an opportunity to cross-examine, and declined to do so," does not cure the error.

In *People* v. *Becker*, 210 N.Y. 274, 104 N.E. 396, where the court improperly and unduly restricted the cross-examination of the state's main witness, the error was not cured by the fact that he was later recalled for further questions, and then tendered to the defendant "for further and complete cross-examination," which the accused declined.

In *State* v. *Howard, supra; State* v. *Hollenbeck, supra;* and *People* v. *Becker, supra,* the error committed by the court in excluding the particular question in cross-examination was the denial of a basic constitutional right afforded all persons in criminal prosecutions and as the courts have stated in the above cited cases, the error cannot be cured even though defendants were afforded an opportunity later to fully cross-examine the witness on the subject which was previously excluded.

In *J. E. Hanger, Inc.* v. *United States, supra,* the District Court denied defendant the right to cross-examine a witness who testified for the government. The colloquy on the subject which is quoted in the margin below[6] indicates the District Court did inform defense counsel on several occasions that the court will permit cross-examination

---

[6] " 'The Court: You may go ahead. (Addressing government counsel.) Where is your man that got those instruments?

" 'Mr. Godin: I don't see him in court.

" 'The Court: Have him here. Let's excuse this witness (Dellinger) now. He won't be helpful to you.

" 'Mr. Godin: All right. We will excuse this witness.

" 'Mr. Hardy (counsel for defendants) : May I ask him some questions?

" 'The Court: No, sir. You may later, if you see fit.

" 'Mr. Hardy: I would like to cross-examine him.

" 'The Court: I am not going to let you do it at this time. Have your other witness here and proceed with the other witnesses. I will let you do it later.

" 'Mr. Hardy: May we—

" 'The Court: Now, Mr. Hardy, you have an objection. You won't complain about an ample opportunity to examine as soon as we get through here, but this man Dellinger has testified to very little on his

later, if defense counsel saw fit to do so. Likewise, the District Court informed counsel that defendant could call the witness as their own witness. It is evident that the offer of the trial court to permit cross-examination later was not accepted by the defendant who assigned as error this denial of the right of cross-examination. In reversing the judgment, the court stated that "cross-examination is a matter of right and not a mere privilege." The offer of the District Court to permit cross-examination of the witness later in the trial did not merit discussion by the court.

As stated in *People* v. *Davey*, 179 N.Y. 345, 347, 72 N.E. 244, 245, a rape case, "\* \* \* it has come to be one of the accepted maxims of our jurisprudence that appellate courts will not be astute to find mere technical errors upon which to reverse judgments. There are cases, however, in which apparently technical errors may be so prejudicial as to produce the gravest injustice. This may be particularly true of a case in which a defendant, accused of an abhorrent and detestable crime, finds himself confronted at the very threshold of the court room, with the subtle, pervasive and almost ineradicable prejudice which the bare charge of such a crime may engender against him,

---

direct. He identified three or four—added a little to the further identification—and I am not going to waste any time on cross-examination. You will have to take your exception.

" 'Call your next witness.

" 'Mr. Godin: I would like to recall Mr. Feller for just one question:

" 'The Court: All right.

" 'Mr. Hardy: If Your Honor pleases, may I make an offer for the cross-examination of this witness?

" 'The Court: No; when we get through, if I have overlooked giving you a fair trial, you call it to my attention. But we are not going to waste any time. That man didn't help the case a bit. If you want to put him on as your witness, you can put him on at any time.

" 'Mr. Hardy: If Your Honor pleases, I think he could help all right. I think he could help my case.

" 'The Court: Put him on then, at the proper time.

" 'Mr. Hardy: I have the right to cross examine, do I not?

" 'The Court: You do not now, and it is your exception.' " *J. E. Hanger, Inc.* v. *United States*, 160 F.2d at 9-10, n.2.

in the minds of those who are to pass upon his guilt or innocence.* * *"

The procedure adopted by the prosecutor in the piecemeal presentation of the testimony of the complaining witness and the ruling of the trial court in restricting cross-examination of the prosecutrix only on what she has testified in the second direct examination, resulted in a definite denial of the defendants' constitutional right of confrontation and the right to a fair trial. The judgment of conviction of all the defendants should be reversed and a new trial ordered so that they may be tried in accordance with the basic principles of constitutional law.