UNITED STATES of America,
Plaintiff-Appellee,

v.

Herbert OTT, Defendant-Appellant.

No. 73–1251.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 19, 1973.

Decided Dec. 5, 1973.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, William J. Schilling, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before KILEY and STEVENS, Circuit Judges, and WYZANSKI, Senior District Judge.*

STEVENS, Circuit Judge.

The principal question is whether a material misstatement to the trial judge is the kind of prosecutorial misconduct which requires reversal. Possibly because we are influenced by the prosecutor's failure to acknowledge the error in his brief, or at the opening of oral argument, in this court, we conclude that it does. We also hold that defense counsel was entitled, during cross-examination of an important witness, to learn where and by whom the witness was employed.

Defendant was indicted for knowingly possessing checks stolen from the mail in violation of 18 U.S.C. § 1708. The trial judge directed a verdict of acquittal on one count; the jury found defendant guilty on the other three.

The principal witness on the issue of knowledge was a government informer named Moshis, who testified that he and one T. W. Allen had purchased checks from mailmen and resold them to the defendant to be negotiated. At the time

of trial, Moshis was on parole. In order to prevent that fact from coming to the attention of his employer, the judge sustained objections to questions on cross-examination asking the witness for the name and address of his employer. The court also refused to permit the defendant to try to establish that T. W. Allen, as well as Moshis, was a government informer. In resisting that attempt, the government misled the trial judge.

The prosecutor stated:

"Your Honor, I think a basic fact that Mr. Ackerman is assuming is that Mr. Allen was an informer. If Mr. Allen was a Government informer at this time, a good question is why was he found guilty of the offense he was charged with. *I will put on as many Government agents as I can that will say he was never an informant, he never was.*" (Emphasis added.) Tr. 348.

Another case which we recently heard *en banc* involved the validity of a search warrant based on information about stolen checks provided to the government by T. W. Allen. In that case, the government represented that T. W. Allen was "a reliable informant, whose information in the past has led to the conviction of at least six people."[1] In response to questions from the court during oral argument of this appeal, government counsel acknowledged that the T. W. Allen who was relied upon as an informant in *Carmichael* is the same T. W. Allen whose status as an informant was vehemently denied in the court below.

■ We assume that the denial by the trial attorney was made in good faith in the sense that he did not know that his representation was factually erroneous. Nevertheless, when an unequivocal material representation of this kind is made to the trial judge for the

* Senior District Judge Charles Edward Wyzanski, Jr., of the District of Massachusetts, is sitting by designation.

1. See United States v. Carmichael, 489 F.2d 983 (7th Cir., 1973). The affidavit presented to the magistrate in the *Carmichael* case did not identify Allen as the informant, but his identity was subsequently disclosed and is acknowledged by the government.

purpose of persuading him to make a ruling favorable to the government, the prosecutor is charged with the knowledge of his associates. Whether the misstatement "was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government." Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 33 L.Ed.2d 104.

Moreover, this court is entitled to expect candor from attorneys representing the United States. Even though appellate counsel for the government knew that trial counsel had misled the trial judge in connection with a ruling challenged on appeal, no disclosure of that fact was made to the appellant or to this court prior to oral argument. Only after questions from the bench, which were prompted by familiarity with the record in the *Carmichael* case, did government counsel make the disclosure. At that time the acknowledgment was both forthright and unequivocal. Nevertheless, if silence would have served to perpetuate continued judicial reliance upon the prosecutor's false statement, it is ev-

ident that the attorney for the sovereign would have been content.

■ A committee of The American Bar Association has set forth the relevant standard governing professional conduct: "Fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a tribunal . . . is inconsistent with fair administration of justice, and it should never be participated in or condoned by lawyers." Final Draft of the Proposed Code of Professional Responsibility, p. 107. The principle underlying such a rule is broad enough to encompass not only deceptive acts, but also deceptive omissions.[2]

Though the prosecutors are no doubt familiar with Mr. Justice Sutherland's classic statement of the obligation of the attorney for the sovereign in Berger v. United States,[3] on occasions zeal for victory nevertheless supersedes the overriding obligation to govern impartially.[4] to make it plain that the language of *Berger* conveys a message which must be heeded, not just admired, reversal is sometimes required.[5]

2. Professional responsibility, thus, extends even to requiring counsel to cite pertinent legal authority contrary to his position to the court. *Id.*, at p. 82. The conduct of the United States Attorneys commended by Judge Friendly in United States v. Adams, 385 F.2d 548, 550 (2d Cir. 1967), is conduct which the court is entitled to expect from counsel who are engaged, with it, in administering justice. This is especially true if counsel is representing the United States.

3. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to

use every legitimate means to bring about a just one." Berger v. United States, 295 U. S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314.

4. *Cf.*, United States v. Powers, 467 F.2d 1089, 1097–1098 (7th Cir. 1972) (dissenting opinion).

5. We are acutely aware of the cost to society of ordering reversal. The difficulty a court faces in having to apply *Berger* is illustrated by Judge Learned Hand's comment in United States v. Lotsch: "Unhappily, it would accomplish little towards punishing the offender, and would upset the conviction of a plainly guilty man. No doubt such an impropriety may be grave enough to demand this extreme course: the Supreme Court found us too complaisant, for example, in Berger v. United States, 295 U.S. 78, 55 S. Ct. 629, 79 L.Ed. 1314. It is hard to know where to draw the line; but the offense was far less flagrant here than in Berger's case, and it seems to us that a reversal would be an immoderate penalty." 102 F.2d 35, 37 (2d Cir. 1939). In this case we conclude that reversal is not an immoderate, but rather is the required, penalty.

■ Of course, every lack of professionalism will not require reversal. But the combination of factors presented by this record demands more than adverse comment. First, the misrepresentation was made not by an attorney for a private party but by the Assistant United States Attorney. Second, even assuming that the misrepresentation to the trial judge was the product of a misunderstanding by trial counsel, his factual assertion was unequivocal. Third, even though Allen's true status was arguably collateral to the issue presented to the judge, both parties sought to influence the court in the exercise of its discretion by appealing to differing versions of that status.[6] Finally, and perhaps most troublesome, long after the pressures of the trial were past, notwithstanding admitted knowledge of the truth, an awareness of the argument advanced in this court by appellant, and with the benefit of the reflection that should attend the preparation of an appellate brief and oral argument, the prosecutor was content to allow us to appraise the issue on the basis of a false predicate.

Almost four decades ago a unanimous Supreme Court held that "the rudimentary demands of justice" were violated by "a deliberate deception of court and jury by the presentation of testimony known to be perjured." Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791. This principle encompasses the prosecutor's failure to correct false testimony, even though unsolicited and even though it related only to the witness's own credibility.[7] In the case before us, we must regard as deliberate[8] the prosecutor's misstatement, his offer to produce inaccurate testimony, and his failure to correct his own misrepresentation. We need not decide whether such conduct violates the standards of constitutional due process; unquestionably, however, the principle underlying *Berger* and *Mooney* requires us to reverse this federal conviction and remand for a new trial.

■ We are also persuaded that the trial judge placed an improper limitation upon the cross-examination of the witness Moshis. Generally, the "extent to which cross-examination of a witness will be allowed rests in the sound judicial discretion of the trial court."[9] Rulings by the trial judge in the midst of the examination which, for example, prevent counsel from quibbling with the witness, or asking questions outside the scope of the direct examination, are respected upon appeal. But the latitude of the trial judge is more limited when ruling on foundation questions ordinarily asked at the outset of cross-examination.

6. Defendant was endeavoring to establish the basis for an entrapment defense. We agree with the government that proof that Allen was an informant would not have been sufficient to demonstrate entrapment. That agreement, however, does not dispose of the problem. For if defendant had obtained a favorable ruling in connection with the dispute over Allen's status, he might have elected to testify and we have no way of evaluating the strength of the entrapment defense which might have been supported by that testimony buttressed by a correct description of Allen's relationship to the government. We do not reach the question whether the evidence about T. W. Allen should have been received. That is a question for the trial judge to decide in the first instance. But that decision must not be influenced by affirmative misstatements on behalf of the government about the status of T. W. Allen. We cannot say that the government's misstatements could not "have had an effect on the outcome of the trial." Napue v. Illinois, 360 U.S. 264, 272, 79 S.Ct. 1173, 1179, 3 L.Ed.2d 1217.

7. This point was recognized in Justice Schaefer's dissenting opinion in Napue v. People, 13 Ill.2d 566, 150 N.E.2d 613, 616–618 (1958), and embraced by a unanimous Supreme Court in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

8. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That [inconsistency between the actions of different prosecutors] was inadvertent does not lessen its impact." Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427.

9. Beck v. United States, 298 F.2d 622, 629 (9th Cir. 1962).

In Smith v. Illinois, the Supreme Court held that it was constitutional error to sustain objections to defense counsel's questions asking a witness for his name and where he lived, stating:

> "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." 390 U.S. 129, 131, 88 S. Ct. 748, 750, 19 L.Ed.2d 956.

The questions counsel propounded here were precisely of that character.[10]

■ There are occasions, of course, when compelling reasons, such as concern for the safety of a witness, may justify curtailing even this preliminary inquiry.[11] The trial judge has discretion to determine when such reasons exist. Given the necessity of permitting counsel to begin an adequate cross-examination, however, the scope of discretion is more limited at that point than after an adequate foundation has been established. For "when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth'[12] through cross-examination must necessarily be to ask the witness who he is and where he lives." Smith v. Illinois, supra, 390 U.S. at 131, 88 S.Ct. at 750.

■ In the present case, when defense counsel sought to learn where the witness was employed, counsel for the government objected. The trial judge sustained the objection, on the ground that if the witness' employer were to learn that the witness was on federal parole, the witness' job might be

---

10. The analysis offered by Mr. Justice Stone in Alford v. United States elucidates the purpose for the strict rule governing the commencement of cross-examination:

> "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. Knapp v. Wing, 72 Vt. 334, 340 [47 A. 1075]; Martin v. Elden, 32 Ohio St. 282, 289. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. Tla-Koo-Yel-Lee v. United States, [167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166] supra; King v. United States, supra; People v. Moore, 96 App.Div. 56, [89 N. Y.S. 83]; affirmed without opinion, 181 N.Y. 524, [73 N.E. 1129]; cf. People v. Becker, 210 N.Y. 274 [104 N.E. 396]. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. Nailor v. Williams, 8 Wall. 107, 109, [19 L.Ed. 348]; see People v. Stevenson, 103 Cal.App. 82 [284 P. 487, 491]; cf. Brasfield v. United States, 272 U.S. 448 [47 S.Ct. 135, 71 L.Ed. 345]. In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony. Nailor v. Williams, supra.
> "The present case, after the witness for the prosecution had testified to uncorroborated conversations of the defendant of a damaging character, was a proper one for searching cross-examination. The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed. State v. Pugsley, 75 Iowa 742 [38 N.W. 498]; State v. Fong Loon, 29 Idaho 248, 255ff., [158 P. 233]; Wallace v. State, [41 Fla. 547, 26 So. 713] supra; Wilbur v. Flood, [16 Mich. 40] supra; 5 Jones Evidence (2d ed.) § 2366." 282 U.S. 687, 692–693, 51 S.Ct. 218, 219, 75 L.Ed. 624.

11. United States v. Crovedi, 467 F.2d 1032, 1034–1035 (7th Cir. 1972); see also Smith v. Illinois, supra, 390 U.S. at 133–134, 88 S. Ct. 748 (White, J., concurring); United States v. Smaldone, 484 F.2d 311, 318–319 (10th Cir. 1973).

12. See Pointer v. Texas, 380 U.S. [400], at 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (footnote is the Supreme Court's).

endangered.[13]  We conclude that such a question, like asking a witness his name and address, was "an essential step in identifying the witness with his environment, to which cross-examination may always be directed."  Alford v. United States, *supra,* 282 U.S. at 693, 51 S.Ct. at 220.  Although the trial judge's motive was commendable, the reason expressed is not sufficiently compelling to override defendant's right to conduct a meaningful cross-examination.[14]

The judgment is reversed and the case remanded for a new trial.

13.  Tr. 196.

14.  Since the prosecutorial misconduct requires reversal, we need not decide whether the limitation on cross-examination was reversible error.